Isidor Wasservogel, Spec. Ref.
Plaintiff seeks to enjoin defendants from engaging in the securities business within and from the State of New York on the ground that each of them has engaged and participated in fraudulent practices, as defined in article 23-A of the Q-eneral Business Law, commonly known as- the “ Martin Act.”
The complaint sets forth 14 causes of action wherein it is alleged, in substance, that during the period from April 28,1952, to February 10,1954, defendants fraudulently offered, promoted and/or sold stock of certain corporations to the general public. The first, second and thirteenth causes of action concern alleged fraudulent statements in the offering circulars of Albert Black Television Productions, Inc., American & Foreign Productions, Inc., and Northwest Uranium Corporation. The third cause of action relates to the alleged insolvency of American & Foreign Productions, Inc., while its stock was being offered and sold to the public. The fourth cause of action charges certain of the defendants with failing to file various notices and statements required by the provisions of the Martin Act. The fifth, sixth, seventh, eighth and ninth .causes of action concern alleged fraudulent practices engaged in by defendants with resnect to *909 the sale of stock of Electronics & Nucleonics, Inc. The tenth cause of action involves alleged fraudulent representations made to one Harrigan and one Angelo by defendants Cushman and Boyal Securities Corporation. The eleventh and twelfth causes of action concern Boyal Securities Corporation’s alleged improper method of defraying its expenses against companies which had engaged it as underwriter and with conducting business while it was insolvent. The fourteenth cause of action charges the defendants Boyal and Cushman with misrepresenting the value of various securities sold by them.
Although the complaint sounds in fraud, many of the requirements of an ordinary legal action for fraud need not be established by a plaintiff in an action brought pursuant to the provisions of the Martin Act. In actions of this type, for example, a plaintiff need not prove reliance by the purchasers of the securities involved on the fraudulent representations, nor is it necessary' for a plaintiff' to prove any element of damage (People v. Electro Process, 284 App. Div. 833). Likewise, an absence of scienter or intent to defraud will not relieve a defendant from liability where the purchasing public is actually being deceived and defrauded (People v. Federated Radio Corp., 216 App. Div. 250, 251, affd. 244 N. Y. 33, 37-38). The opinion of the Court of Appeals in this case clearly indicates that the primary purpose of the Martin Act is “ remedial in its character ” (p. 37). It was designed to prevent all kinds of fraud in connection with the sales of stocks, bonds and other commodities and to defeat all unsubstantial and visionary schemes in relation thereto, whereby • the public is fraudulently exploited. The provisions of this ‘ ‘ blue sky law ’ ’ must be liberally construed by the court, therefore, in order that its beneficent purposes may, so far as possible, be attained and the inexperienced, confiding and credulous investor protected from his own foolish cupidity (People v. Wachtell, 181 Misc. 1010, 1011). Thus, the words “ fraud ” and “'fraudulent practice ” in connection with defendants ’ alleged activities must be given a wide meaning so as to encompass all acts, although not originating in any actual evil design or contrivance to perpetrate a fraud or injury upon others, do, by their tendency to deceive or mislead the purchasing public, come within the purpose and intendment of article 23-A of the General Business Law (People v. Federated Radio Corporation, supra, pp. 38-39).
Although the complaint before the court cannot be commended as.a model of conciseness, its lengthy causes of action, nevertheless, indicate the variety of fraudulent practices and deceitful devices employed by defendants in the course of their business *910 activities relating to the sale of securities. The record clearly establishes that the defendants John B. Milliken (hereinafter referred to as “Milliken”), Cushman and Boyal Securities Corporation (hereinafter referred to as “Boyal”) fraudulently misrepresented to customers of Boyal that this corporation would act as broker or agent for these customers in purchasing for their accounts thousands of shares of stock of Electronics & Nucleonics, Inc., when, in fact, Boyal, under Milliken’s control, acted as a principal in selling to such customers its personally-owned stock and that owned by Milliken, its president and sole stockholder. The law is well settled that a broker or agent may not himself supply securities needed to fill an order. A customer is entitled to the disinterested services of an impartial broker, free from any temptation of the broker to make a personal profit from any individual transaction (Mayo v. Knowlton, 134 N. Y. 250, 252-253; People v. Gerber & Co., N. Y. L. J., July 10,1936, p. 101, col. 1; Meyer on Stock Brokers and Stock Exchanges, § 51, pp. 279-280, § 55, pp. 289-290). The credible testimony and documentary evidence show that over the period from August 31, 1953, to January 19, 1954, Boyal confirmed net purchases of over half a million shares of stock of Electronics & Nucleonics, Inc. (hereinafter referred to as “ Electronics”). At no time during this entire period did Boyal purchase the Electronics stock for the accounts of its customers in arms-length transactions in the open market, as was required by virtue of the fiduciary relationship existing between Boyal, as a purported broker, and its customers. Boyal was under an absolute duty to confirm the transactions to its customers at the prices at which it or Milliken purchased the stock. By reason of this, and by the overt misrepresentations and failure to disclose to its customers the full nature and extent of Boyal’s and Milliken’s interests in the purported brokerage transactions, the fiduciary relationship existing between these defendants and its customers was breached. Moreover, an undisclosed profit was necessarily realized by Boyal and Milliken to the extent of the difference between the purchase and the sales price of the Electronics stock. Contrary to defendants’ contention, the mere fact that the Securities & Exchange Commission gave Milliken permission to sell his personally owned Electronics stock, is not sufficient basis to abrogate his duties as a broker nor excuse his failure to purchase stock for his customers in the open market in “ nonpersonal ” transactions. The conclusion is inescapable that Boyal was a principal'at the time it sold its own stock and Milliken’s stock to Boyal’s customers. It necessarily follows, therefore, that when Boyal represented *911 to its customers that it acted as their broker, Royal and Milliken perpetrated a fraud within the scope of the Martin Act.
With respect to the sale of stock of Albert Black Television Productions, Inc., American & Foreign Productions, Inc., and Northwest Uranium Corporation, contrary to defendants’ contention, Royal and Milliken were promoters and/or underwriters of these securities. As such, they were under a duty to make a reasonable investigation concerning the truth and accuracy of the statements contained in the offering circulars and other sales literature before they were issued to the general public for its consumption (People v. Federated Radio Corp., 244 N. Y. 33, 41, supra). The proof adduced upon the trial clearly establishes that they failed to comply with their duty. In the offering circular distributed to the public by Royal to promote the sale of stock of Albert Black Television Productions, Inc., over a period from May 13, 1952, to May 11, 1953, it was represented that the latter-mentioned corporation owned a series of “ tele-films ” which purportedly were in the hands of a large television film distribution corporation and were being shown on television stations throughout the country. None of these “ tele-films,” however, was in fact shown on any television station at any time, and the corporation derived no income or revenue therefrom. Milliken, and through him, Royal, had full knowledge of these misrepresentations contained in the offering circular but did nothing to eliminate them therefrom. Likewise, the offering circular with respect to the stock of American & Foreign Productions, Inc. (hereinafter referred to as “American”) failed to disclose the material fact that American merely had a limited interest in the properties mentioned therein, which limited interest was subject to termination in the sole and absolute discretion of the actual owners of these properties. Thus, the purchasing public remained ignorant of such vital information, which Royal and Milliken were under the unquestionable duty of setting forth in the offering circular and other sales media. Furthermore, in the offering circular employed by Northwest Uranium Corporation to sell its stock, the representation contained therein that one Tracy expended $76,000 for acquisition and preliminary prospecting of mining claims was grossly misleading. This misrepresentation, however, is binding solely on Northwest Uranium Corporation. Milliken and Royal, however, are chargeable with a breach of duty with respect to the stock of Northwest Uranium Corporation in that on and subsequent to January 26, 1954, they continued to offer and to sell such stock to the public although they were advised *912 that, contrary to the statements contained in the offering circular, the mining claims set forth therein were worthless. As above noted, lack of scienter, contrary to defendants’ arguments, does not serve to relieve defendants of liability herein (People v. Federated Radio Corp., supra; Matter of Charles E. Bailey & Co., S.E.C. Release No. 4806, March 25, 1953, C.C.H., Fed. Securities Service, pp. 76, 218).
The credible testimony and documentary evidence show that Royal, at Milliken’s direction, diverted funds from corporations, the stock of which Royal was underwriting and selling, by charging improper underwriting expenses against these corporations. Such items of expense as Royal’s own rent, salaries of its employees, electricity and telephone costs were charged against the issuing corporations as underwriting expenses. To the extent that these items of expense were charged by Royal and paid to it, the public was necessarily defrauded, in that the capital of the issuing corporations, the sale of whose stock Royal was soliciting, was thereby improperly ■ and fraudulently depleted.
Likewise, the credible evidence establishes that the defendant Cushman fraudulently misappropriated moneys delivered to him by Royal’s customers and, by means of fraudulent representations, induced them to purchase securities from Royal. The record shows that on December 12, 1953, one Ginepra, a customer of Royal, delivered to Cushman $502, which, together with a credit balance on Royal’s books in Ginepra’s favor, constituted payment in full for 5,000 shares of Electronics & Nucleonics stock. Cushman delivered to Ginepra a receipt which indicated payment of the said sum, but he never turned over: any of these moneys to Royal, nor do Royal’s books in any way reflect the receipt of said moneys from Cushman. The mere, fact that Royal owed Cushman an amount of money in excess of $502 is insufficient to condone Cushman’s act of taking moneys received by him from a customer without authorization of the officers of the corporation. which would be obliged to make delivery of the customer’s stock. Other transactions involving customers of Royal, such as one Harrigan, Papp, and Kozieracka, clearly establish Cushman’s continued fraudulent practices in the sale of securities. It is to be noted that Cushman failed to rebut any of the evidence submitted against him by plaintiff.
The defendants Peter H. Milliken and. John R. Finegan were joined in this action primarily because they were directors of various corporations involved herein and not due to any overt act or active fraudulent practice on their part. Con *913 cededly, an officer and director of a corporation may be liable for the' fraudulent practices of his corporation under the provisions of the Martin Act. As plaintiff contends, a director who sits by indifferently and supinely, while his colleagues are fleecing the public and does nothing to discover such fraudulent practice and prevent it, is as dangerous to the public weal as the actual wrongdoer and perhaps even more so, for it may be that the reputation for honesty and fair dealing of this very person is that which entices the public to buy (People v. Photocolor Corp., 156 Misc. 47, 51). The facts in the instant action insofar as they relate to these two defendants, however, in the opinion of the court, do not warrant the stringent relief of injunction which is sought by plaintiff.
The defendant Hyde, however, as a vice-president, treasurer and director of American & Foreign Productions, Inc., cannot be deemed merely an indifferent and disinterested director. Hyde was a party to the fraudulent offering circular issued by Boyal and American concerning properties purportedly owned by American, ■ as herein discussed. Moreover, Hyde failed to file required dealer’s statements and notices with the office of the Attorney-General of the State of New York. Furthermore, Hyde, like Cushman, failed to rebut any of plaintiff’s evidence offered against him.
In the opinion of the court, the presence of persons on the directorate of a corporation, and the principals, agents or brokers of a firm seeking to sell securities, who employ devious methods to cheat and defraud the purchasing public, are evils which must be eliminated if an innocent and credulous public is to be safeguarded. Judgment, accordingly, is rendered in favor of plaintiff enjoining the defendants, Boyal, John B. Milliken, Cushman, Hyde and Northwest Hranium Corporation from engaging in the securities business within and from the State of New York, as prayed for in the complaint. Judgment is rendered in favor of the defendants Peter H. Milliken and John B. Finegan dismissing the complaint upon the merits.
No costs are awarded to any of the parties. Submit decree within 10 days on three days’ notice.
The above constitutes the decision of the court as required by the applicable provisions of the Civil Practice Act.