Ralph E. 'Cory, J.
The petition alleges that the- respondent “ while acting in concert with one other, also apprehended, was in a 1971 Pontiac Le Mans — no registration — the property df Robbins Reef Buick Corporation 44 Hannah Street, Staten Island, New York. The respondent had no permission to use the above vehicle
The respondent, on his first appearance bef ore the court, was assigned counsel pursuant - to article 18-B of the County Law. When the assigned attorney appeared in this proceeding, he made a motion to vacate the petition and send the case back to intake for consideration de novo on the ground that the respondent had been denied his constitutional right to counsel at the intake stage of the Family Court proceeding. The court directed that the respondent’s attorney file a memorandum of law in his behalf. The fact-finding hearing has not commenced pending decision on the motion by the court.
The sole question for determination is whether the initial intake conference is a critical stage in the proceedings within the meaning of the constitutional guarantee of the right to counsel thereby depriving the respondent of this right. This initial intake conference occurs before a petition is ordered drawn and prior to the holding of a Family Court hearing.
*1043 The intake procedure of the Family Court insofar as it applies to juvenile delinquency cases is provided for in section 734 of the Family Court Act and section 2506.3 of the Uniform Family Court Rules (22 NYCRR 2506.3). Section 2506.3 provides in part: “ The probation service is authorized to confer with any person seeking to originate a juvenile delinquency or person in need of supervision proceeding under article 7 of the Family Court Act, with the potential respondent and other interested persons concerning the advisability of filing a petition under said article and to attempt to adjust suitable cases before a petition is filed ”.
The intake officer can adjust a case at intake where the accused youth denies his guilt of any offense. Intake process in juvenile courts is a specialized proceeding in the constellation of court services and procedures. There are more social than legal issues involved. Adjustment is not mandatory and the rules specifically provide that the probation service may not prevent any person or complainant from having access to the court if he insists that a petition be filed. It permits informal adjustments to be made at intake but includes provisions designed to protect the rights of the parties' in this process. No person can be compelled to appear at any conference, produce any papers or visit any place.
Under subdivision (c) of section 734 of the Family Court Act, “Efforts at adjustment pursuant to rules of court * * * may not extend for a period of more than two months without leave of a judge of the court, who may extend the period for an additional sixty days. ”
Intake is not a legal term and with the exception of juvenile and family courts, is foreign to the court field. Its use in juvenile and family courts has no doubt been adopted from the field of social welfare. In the welfare field, the client has complete freedom of choice. He comes to the agency and he may or may not decide to accept the service if offered. At the same time, the agency also has freedom of choice. It may or may not accept the client for service, particularly in the private welfare field.
The same is not true with court intake. The “ client ’ ’ defined as the person complained about or alleged to be. in a situation necessitating action, has no freedom of choice. Here the request for action is initiated by someone other than the client. Whatever freedom of choice exists as to whether action will be taken rests in the court, not in the client. Unlike the private welfare agency, the court’s authority to deny the right to file a petition *1044 is controlled by the nature of the case. Certainly giving the court this power can be justified and is fairly well established, at least by custom in delinquency cases. (William H. Sheridan, “Juvenile Court Intake ”, 2 Journal of Family Law 139, University of Louisville [19621.)
Delinquency cases involve offenses which if committed by an adult would be a crime. Here the State is usually a party to the action. The decisions made at intake level, affect individual and community rights — the right of the child and family to personal freedom and privacy and at the same time the right of the child and family to receive the services of the State for care, protection and treatment. (2 Journal of Family Law, supra, p. 141.)
The New York Family Court Act provides for due" process of law in section 711, stating: 11 The purpose of this article is to provide a due process of law (a) for considering a claim that a person is a juvenile delinquent or a person in need of supervision and (b) for devising an appropriate order of disposition for any person adjudged a juvenile delinquent or in need of supervision.” The landmark case in the area of due process for juveniles is Matter of Gault (387 U. S. 1). In this casé, the New York Family Court Act was quoted with approval on several occasions. In determining whether the Gault decision and the New York Family Court Act should be expanded to provide a right of counsel at intake proceedings it is first necessary to examine the relevant provisions of the Family Court Act and the specific holdings of Gault.
Section 241 of the Family Court Act provides: ‘ ‘ that minors who are the subject of family court proceedings should be represented by counsel of their own choosing or by law guardians. This declaration is based on a finding that counsel is often indispensable to a practical realization of due process of law and may be helpful in making reasoned determinations of fact and proper orders of disposition.”
This act preceded Gault by some five years and obviously the right to counsel in juvenile proceedings already existed in New York at the time of that case. Gault is limited to adjudicatory hearings resulting in incarceration. The question then' becomes whether right to counsel also exists at intake proceedings. No specific answers to whether the intake stage of a juvenile delinquency proceeding is a critical stage of the proceedings wherein the right to counsel attaches is supplied by section 241 or the entire Family Court Act. Nor does Gault provide any answers to this specific question,
*1045 The answer does however lie in section 735 of the Family Court Act indicating strong legislative intent that no counsel is necessary at the intake stage of proceedings. This section provides that: “No statement made during a preliminary conference may he admitted into evidence at a fact-finding hearing or, if the proceeding is transferred to a criminal court, at any time prior to a conviction.”
■See also subdivision (d) of section 2506.3 of the Uniform Family Court Rules (12 NYCRR 2506.3 [d]). This section makes inadmissible at a fact-finding hearing any statement made during a preliminary conference carried on under probation service connected with the Family Court and does not refer to questioning by police and statements made to police which are not within the proscription of this section. (Matter of Williams, 49 Misc 2d 154; Matter of Addison, 20 A D 2d 90.) This preserves the spirit of co-operation which it is to be hoped prevails, at a preliminary conference such as intake and guards against self incrimination, a prohibition in Gault. Furthermore, subdivision (b) of section 734 provides that: “ The probation service may not prevent any person who wishes to file a petition under this article from having access to the court for that purpose.” (See, also, 22 NYCRR 2506.3[a]). This is further protection to the respondent because this is still the pre-fact-finding hearing level where the presiding Judge, rather than the intake officer, will make the determination as to whether or not a petition will issue.
Counsel for respondent elaborates at length in his memorandum of law on holdings in adult criminal cases which find preliminary conferences to be a critical stage of the proceedings requiring constitutional safeguards. However, these all refer to police custodial interrogations. Intake officers do not make arrests or charge anyone with acts which if committed by adults would be crimes. This is all done before the respondent arrives at the intake door.
In other words, section 735 accomplishes in effect what Miranda (Miranda v. Arizona, 384 U. S. 436) accomplishes: If the juvenile is to be encouraged to make admissions, despite the privilege against self incrimination, he should be protected against the use of such admissions at ensuing proceeding^. (Dorsen and Rezneck, “ Gault and the Future of Juvenile Law,” 1 Family L. Q., No. 4 [Dec., 1967].) Furthermore, there can be no unnecessary detention of the juvenile in the Family Court. If the probation service for any reason should not release the child before the filing of a petition, he must be brought before a Judge of the Family Court and ‘ the judge shall hold a hear *1046 ing for the purpose of making a preliminary determination of whether the court appears to have jurisdiction over the child. At the commencement of the hearing, the judge shall advise the child of his right to remain silent, his right to be represented by counsel of his own choosing, and of his right to have a law guardian assigned. * * * He [the Judge] must also allow the child a reasonable time to send for his parents or other person legally responsible for his care, and for counsel, and. adjourn the hearing for that purpose.” (Family Ct. Act, § 728, subd. [a] ; see, also, Family Ct. Act, § 727, subd. [d], and § 741, subd. fa]).
Thus both Gault and the New York Family Court Act provide for counsel at adjudication at the very least. The quéstion is-how far Gault can be expanded. In fact, Gault stated ‘1 we are not here concerned with the procedures or constitutional rights (applicable to the pre-judicial stages of the juvenile process ”, (Matter of Gault, 387 U. S. 1, 13, supra).
The threat of self incrimination is mitigated by the exclusion provision of section 735. Counsel for the respondent argues that the mere presence of counsel for the respondent at the intake level will prevent the issuance of a petition. This is not necessarily true and is a legal non sequitur. The fact that a petition may issue and a record created for the juvenile depends on what develops at the subsequent fact-finding hearing. The petition may be dismissed for lack of credible or legal evidence. The standard of proof is now 1 ‘ beyond a reasonable doubt ” rather than mere preponderance. Is intake level to be designated a critical stage for the juvenile because it determines whether an official record of delinquency adjudication will become part of the child’s dossier Í Intake referral for petition per se would not create an institutional commitment. It may well be that the desired openness of the intake interview can be maintained with counsel present as well as absent at least where under section 735 of the Family Court Act admissions made by the juvenile may not be used at the hearing. (Daniel L. Skoler, “ Counsel in Juvenile Court Proceedings — A Total Criminal Justice Prospective,” 8 Journal of Family Law 243 [1968].)
To require counsel at intake would be an intolerable burden on an already overburdened court. The lack of manpower is both frightful and appalling. This is a valid argument entitled to great weight and has great relevancy. If there was no section 735 of the Family Court Act with its exclusionary rule, the argument would have no merit over the greater right to be represented at a critical stage of the proceeding, for it would then *1047 become truly a critical stage of the proceedings where counsel would be required.
In addition, it should be carefully noted that under section 735 of the Family Court Act there is an absolute prohibition of the use of any statements or confession made at the intake interview, even though voluntarily made and without coercion or undue influence or even where a waiver of that right was knowingly and intelligently made. Contrast this with admission statements and confessions voluntarily made after Miranda warning or waiver of such rights, intelligently and knowingly made, in adult criminal proceedings where such statements or confessions, voluntarily made can be used against the respondent or defendant.
What greater right then does the juvenile need at intake proceedings than the tremendous protection afforded him under the exclusionary rule of section 735 of the Family Court Act or the equally great right of having the court or Judge determine whether or not any petition will issue against him if a petitioner does not wish an adjustment at intake level and insists upon a petition being drawn.
If intake proceedings are to be classified as critical stages of proceedings despite all the legal protections for the juveniles above enumerated as already in existing law, rules and procedures, then there would be no need for intake proceedings for accused juveniles in furtherance of Family Court policy of rehabilitation and not punishment for crime and petitions should be drawn automatically in all cases and set down for fact-finding hearings.
There is accordingly, no basis based on all of the foregoing for interpreting a logical extension of Gault (387 U. S. 1, supra) to provide counsel at the intake level. There are no abuses in the pre-hearing stage as to impose the procedural requirement of counsel for the respondent at the intake interview. There is no present violation of due process clause of the Fourteenth Amendment by not providing such counsel at the informal intake conference.
Motion to vacate the petition and send the case back to intake for consideration de novo on the ground that the respondent had been denied his constitutional right to counsel at the intake stage of the present Family Court proceeding is denied.
The fact-finding hearing is ordered to commence October 2, 1972,