# In the Matter of DOROTHY D. (ANONYMOUS), Appellant.

Second Department, May 15, 1978

## APPEARANCES OF COUNSEL

*William E. Hellerstein* and *Charles Schinitsky (Barbara H. Dildine* and *Claire Thomas* of counsel), for appellant.

*Allen G. Schwartz, Corporation Counsel (Susan L. Bloom* and *Leonard Koerner* of counsel), for respondent.

## OPINION OF THE COURT

SHAPIRO, J.

The petitioner is a 12-year-old girl whose mother and a neighbor were apparently feuding. The mother swore out a criminal complaint against the neighbor in the Criminal Court of the City of New York. By way of retaliation, as the record makes clear, the neighbor then charged the appellant

with being a juvenile delinquent. At intake in the Family Court and before the neighbor filed a juvenile delinquency petition, she offered to withdraw the charge against the infant, if the latter's mother would withdraw her complaint in the Criminal Court. The mother refused to do so. A delinquency petition was then filed by the neighbor.

Thereafter, the mother withdrew the complaint in the Criminal Court and the neighbor's attorney then wrote the Corporation Counsel that the neighbor would not appear on the return date of the petition and asked that it be withdrawn. That was done.

The Law Guardian, on behalf of the infant, then moved for an order directing the Family Court to *expunge* her name from the docket books, file cards and records kept both by it and the Probation Department and to have all copies of the delinquency petition, indorsements and orders placed in a sealed file to be opened only by order of the court upon notice to appellant and her attorney.

The basis of the application was that while in theory the records of the Family Court are confidential, they are not so in actual practice and the availability of such records could damage the infant's employment prospects and in other ways do her harm.

In opposition, the General Counsel for the Probation Department admitted that as a matter of policy the department did "not oppose an expungement application in those situations where a matter has been adjusted in intake or where there has been no finding after a hearing on the merits, and the child has reached his 16th birthday".

Although the infant had no previous contact with any court, the Family Court Judge, in denying the application, gave as one of his reasons that he had looked at the probation folder and that there is "a family history here of a *sibling* having a problem * * * and there's also some history in the probation folder about the parent, and consequently I intend to deny your application, without prejudice to renewal when the child reaches the age of sixteen" (emphasis supplied).

He then added:

"I feel that the entire social history of a family—individuals —the nature of the allegations here, and the facts that we have gleaned from the Probation record—are essential to

Probation, and consequently to the Court, in determining dispositions if ever they should arise.

"To grant this Motion I think would * * * possibly tie their hands to a degree.

"I am denying the Motion without prejudice to the right to renew when the child reaches sixteen years of age."

The appellant frames the question here presented as: "Whether the judge's refusal to expunge and seal appellant's Family Court record after the complainant withdrew a juvenile delinquency petition against her was an abuse of discretion and violated appellant's constitutional rights." While it is tempting, in view of the comprehensive brief submitted by the appellant on the constitutional issues involved, to treat the question of whether the Family Court's refusal to expunge and seal the record violated her constitutional rights, I feel that in the posture of this case it would be inappropriate to do so.

The respondent concedes that "the Family Court has inherent power over its own records, and could have ordered them sealed and possibly expunged" and that "these records will be maintained only until the appellant is sixteen years old, at which time, the motion to expunge will not be opposed." With that concession in the case, and recalling that the order of the Family Court denied the appellant's motion to expunge without prejudice to renewal when she reaches the age of 16 years, it becomes readily apparent that the respondent does not dispute the right and power of the Family Court, under the circumstances here present, not only to seal the records, but also to expunge those which are sought to be expunged.

We therefore come directly to the question of whether the Family Court abused its discretion in refusing to grant the infant's application. We hold that it did, particularly in the light of the fact that its determination was predicated, in part, on guilt by association—the existence of a sibling's record.

Succinctly put, we have here a situation where, out of pique, an unjustified complaint is made against a minor in the Family Court and, at intake, it is not withdrawn solely because of the refusal of the minor's mother to withdraw a complaint which she had instituted prior thereto in the Criminal Court.

Under such circumstances, we see no reason why the motion should not have been granted. To sustain the Family

Court's action in this case would be tantamount to saying that any unjustified complaint against a minor by a disgruntled neighbor, which completely lacked merit and which was subsequently withdrawn, might forever thereafter tarnish the reputation of the minor and endanger his or her future progress. We cannot subscribe to such a rule of law. While it is true that, theoretically, Family Court records are deemed to be confidential and not open to access to outsiders, we agree with the statement of Judge GABRIELLI, in *Matter of Richard S. v City of New York* (32 NY2d 592, 595), that "the claim of secrecy of juvenile proceedings, ostensibly provided by section 166 of the Family Court Act, is 'more rhetoric than realty' *(In re Gault,* 387 U. S. 1, 24), since many employers, the military services and governmental agencies require information on applicants' Family Court records."[1]

In this case we are concerned solely with the records of the Family Court and the Probation Department. Since the relevant records of the latter are engendered by proceedings before the Family Court, and are subject to disclosure by its order (see Family Ct Act, § 750), they are subject to the jurisdiction of that court.

As the court pointedly noted in *United States v Dooley* (364 F Supp 75, 77), "withdrawn arrest records are no more than gutter rumors" and where, as in this case, they constitute an unwarranted attack upon a person's character and reputation and do harm to her dignity as a human being, they should be expunged (see *Matter of Smith,* 63 Misc 2d 198, 203; *Matter of*

---

1. Out of an overabundance of caution, we point out that while in the *Richard S.* case the court found no statutory or other authority for the granting of the relief therein requested, i.e., expunction of the records, what was there sought was the expunction of all court *and police records* relating to the infant's arrest, trial and adjudication, and it was in that connection that the court found that it could not afford the infant relief, although it was careful to point out that: "The Family Court has, of course, inherent power over its own records" (32 NY2d, at pp 595-596). Similarly, in *Matter of Antonio P.* (88 Misc 2d 437, affd 48 AD2d 1016, affd on opn of Judge MILLER in Family Ct 40 NY2d 960), the Family Court, in ordering that the records of the infant in its court be sealed, pointed out that it was denying the application insofar as police records were concerned because, while "the Family Court has inherent power over its own records * * * there is no statutory or other authority to authorize the expungement of police records" (88 Misc 2d, at p 438). (In this connection, see *Matter of Donald J.,* 37 AD2d 717, 718, where the court stated: "The Family Court is not authorized or empowered to expunge police records * * * However, it has inherent power over its own records." In our case, we are dealing with records over which the Family Court has jurisdiction since no arrest was involved.)

*Terrance J.,* 78 Misc 2d 437).[2] Furthermore, such records have often been used to reject job applicants (The Challenge of Crime in a Free Society, President's Comm on Law Enforcement, 1967, p 75) and to reject otherwise qualified applicants for acceptance into colleges, apprenticeship programs, etc. (Sussman, Confidentiality of Records on Juveniles in Family Court, NYLJ, Jan. 6-8, 1971, p 1, col 4). Under the circumstances, the appellant should not have been relegated to a delay in applying for an expunction and sealing order until she arrived at the age of 16 years. The order appealed from should therefore be reversed, the application of the Law Guardian, made on behalf of the infant, should in all respects be granted and the proceeding should be remanded to the Family Court to supervise the expungement and the sealing of the records in accordance with the procedure outlined in *Matter of Henry v Looney* (65 Misc 2d 759, 761 [WACHTLER, J.]).

HOPKINS, J. P., DAMIANI and RABIN, JJ., concur.

Order of the Family Court, Kings County, dated June 14, 1977, reversed, on the law, motion granted and proceeding remitted to the Family Court for further proceedings in accordance with the opinion herein.

---

2. CPL 160.50 provides for the return of fingerprints and photographs and the destruction of arrest records in certain instances where a criminal action terminates in favor of the accused and some Family Court Judges on the theory that juvenile delinquency proceedings are essentially criminal in nature, have held that due process and equal protection requires extending the benefit of that CPL provision to exonerated infants (see *Matter of Tony W.,* 91 Misc 2d 700; *Matter of Kenneth M.,* 92 Misc 2d 351). In view of the holding in *Matter of Richard S. v City of New York* (32 NY2d 592, *supra),* the question whether those decisions are correct is not now before us.