OPINION OF THE COURT
William Kapelman, J.
The New York City Department of Probation moves to quash a judicial subpoena duces tecum served by the defendant ordering the production of the probation intake records of a juvenile. The issue presented by the motion is one which has never been decided in New York: does the statutory privilege of confidentiality afforded probation intake records, based on the dual public policies of protecting juveniles and encouraging diversion from Family Court procedures, out *374 weigh a criminal defendant’s efforts to obtain and utilize exculpatory evidence at trial in accordance with his Sixth Amendment rights of confrontation and compulsory process?
On August 17, 1978, the complainant was robbed by an armed assailant on the street near her apartment building. A few hours after the robbery, the complainant identified her attacker from the files of police photographs. On the strength of that identification, the police arrested a juvenile and charged him with the crime. Because of his age, the juvenile was referred to the Department of Probation intake branch of the Family Court. Pursuant to intake procedures, the Department of Probation conducted a preliminary conference at which relevant information was gathered from the accused juvenile, the complainant, police officers, and others.
On August 26, 1978, while the intake procedures of the Department of Probation were pending, the complainant noticed the defendant on the street near her apartment building and believed that he might have been the perpetrator of the armed robbery nine days before. Two days later, she again saw the defendant in the same vicinity and was now certain that he was the person who robbed her. The complainant quickly alerted a civilian companion who detained the defendant until police officers arrived and arrested him.
The Department of Probation was thereafter notified that the juvenile had been mistakenly identified. Since a juvenile delinquency petition had not yet been filed by the complainant in Family Court, the juvenile was released from custody and no further action was taken against him.
During her testimony before the Grand Jury, the complainant was questioned about her mistaken identification of the juvenile on the date of the robbery, 11 days before the defendant was arrested. Thereafter, the Grand Jury returned the indictment against the defendant now before this court.
All of the foregoing facts were provided to defense counsel in discovery materials by the prosecution in the well-founded belief that these facts are exculpatory and within the scope of Brady v Maryland (373 US 83).
In preparation for trial, defendant applied for and received a judicial subpoena duces tecum (CPL 610.10, subd 3; 610.20, subd 3; CPLR 2307, subd [a]), ordering the production of the probation intake records of the juvenile. After service was effected, the New York City Department of Probation moved to quash the subpoena duces tecum (CPLR 2304) on the *375 grounds that (1) the subpoenaed records, privileged and confidential under statutes and statutorily authorized rules enacted to accomplish compelling public policy considerations, cannot be used as evidence in any court; (2) the defendant has not demonstrated the relevancy and materiality of the subpoenaed records to the criminal proceeding; and (3) the privilege of confidentiality afforded probation intake records of a juvenile cannot be breached by a judicial subpoena duces tecum issued on behalf of a criminal defendant, especially where the juvenile is not a party to the criminal proceeding. The defendant contends that the subpoenaed records are essential to his defense because (1) the recorded statements of the complainant concerning her identification of the juvenile as the person who committed the robbery will impeach her credibility at trial and are therefore necessary for effective cross-examination; and (2) the recorded statements of the juvenile may prove to exculpate the defendant and demonstrate that the juvenile actually committed the robbery. He therefore submits that the statutory privilege of confidentiality of the records is outweighed by his Sixth Amendment rights of confrontation and compulsory process.
The Department of Probation provides important services to the Family Court and operates in a unique capacity in the juvenile justice system. Mandated by statute as a service agency designed to assist the Family Court and participate in its proceedings (Family Ct Act, § 252, subd [d]; see Matter of Charles C, 83 Misc 2d 388, 390), the Department of Probation is organized and regulated by statute as well as rules of the court (Family Ct Act, § 252, subd [b]). One of the primary service components provided to the Family Court by the Department of Probation is prepetition intake and adjustment (9 NYCRR 348.1 [c]; see Besharov, Practice Commentaries, McKinney’s Cons Laws of NY, Book 29A, Family Ct Act, § 252, p 182). Probation intake, a specialized preadjudication proceeding, is an informal preliminary conference held before judicial proceedings are commenced by the filing of a delinquency petition. The intake procedure of the Family Court confers authority on the Department of Probation to offer informal, voluntary discussions supervised by court-sanctioned social workers to settle differences between the complainant-petitioner and the juvenile respondent. The objectives of the preliminary conference and adjustment at probation intake are (1) to screen from the court those juveniles who, because *376 of age, a good prior history, or other factors, could derive no benefit from court involvement and might be damaged by its stigma; (2) to return the juvenile to the community prior to the initiation of court proceedings through diversion programs; and (3) to shield an overburdened Family Court from those cases which do not require court action (see 9 NYCRR 354.2, 354.3; Matter of Felder, 93 Misc 2d 369, 379; Matter of Patrick G., 92 Misc 2d 126, 132; Matter of Luis R., 92 Misc 2d 55, 56-57; Matter of Edward W., 89 Misc 2d 570, 575; Matter of Charles C., supra, pp 390-391; Matter of Anthony S., 73 Misc 2d 187, 189; Matter of Frank H., 71 Misc 2d 1042, 1043, 1047).
In order to effectuate these important public policies, the statutory and regulatory schemes explicitly govern the procedure of probation intake and adjustment of cases. Thus, the Department of Probation has specific authority to confer with persons seeking to file delinquency petitions, potential juvenile respondents, and other interested persons concerning the advisability of filing a petition. The Department of Probation also has authority to attempt to adjust suitable cases before a petition is filed (Family Ct Act, § 734, subd [a]; 22 NYCRR 2507.2, 2507.3 [a]; Matter of Charles C, 83 Misc 2d 388, 390-391, supra). Of course, the preliminary procedure is entirely voluntary, and the Department of Probation may not compel the appearance of anyone at the conference nor prevent the filing of a petition (Family Ct Act, § 734, subds [b], [d]; 9 NYCRR 354.4 [b]; Matter of Luis R, supra, p 57; Matter of Charles C, supra, p 391). However, when a conference is conducted, the Department of Probation must ascertain and record a brief narrative statement of the underlying events and other relevant facts from the person who seeks to originate a delinquency proceeding (22 NYCRR 2507.3 [c]; 9 NYCRR 354.4 [e]). After the preliminary conference at probation intake is completed, the staff of the Department of Probation must review the case to determine whether it is suitable for immediate adjustment, diversionary programming, or action by the Family Court (9 NYCRR 354.1 [a], 354.4 [d], [h], [i]). Adjustment of cases must be based on recognized criteria contained in a written report (22 NYCRR 2507.6; 9 NYCRR 354.4 [a], [f], [h], [i]).
It is clear that the records kept by the Department of Probation, including those at intake, are engendered by proceedings before the Family Court. Thus, those records are subject to the statutes and rules governing confidentiality and *377 disclosure of records under the jurisdiction of the Family Court (Matter of Dorothy D., 62 AD2d 473, 474, 476). Provisions which govern disclosure of records under the control of the Family Court are applicable to the Department of Probation because the department exists as an advisory and service agency for the court, and is therefore an arm of the court (Family Ct Act, § 252, subd [d]). This relationship is illustrated by numerous statutes and regulations providing for the direct supervision of the Department of Probation by the court in the conduct of preliminary procedures and adjustment of cases (see, e.g., Family Ct Act, § 734, subd [a], par [ii]; 9 NYCRR 354.4 [a], [f], [1], [n]; Matter of Felder, 93 Mise 2d 369, 379, supra). In the case at bar, for example, the case against the juvenile could only have been adjusted upon the prior written approval of a Judge of the Family Court, since the juvenile had been accused of the designated felony of robbery in the first degree (see Family Ct Act, § 734, subd [a], par [ii]; § 734, subd [e]; § 712, subd [h], par [ii]; 724-a, subd 1, par [a]).
Although the Department of Probation correctly claims that its intake records are privileged and confidential, it erroneously relies on sections 735 and 783 of the Family Court Act and 22 NYCRR 2507.4 (a) (6) as the sources of that privilege of confidentiality. In essence, those provisions mandate that no statement made by a potential juvenile respondent during any preliminary conference with the probation service may be admitted into evidence against him or his interests at a fact-finding hearing held in Family Court or in any other court proceeding. This exclusionary rule of evidence preserves the spirit of co-operation which should exist at an effective preliminary conference by encouraging the juvenile to make admissions which cannot be used against him (Matter of Luis R., 92 Misc 2d 55, 57-59, supra; Matter of Anthony S., 73 Misc 2d 187, 191, supra; Matter of Frank H., 71 Misc 2d 1042, 1045, 1047, supra; Committee Comments, McKinney’s Cons Laws of NY, Book 29A, Family Ct Act, § 735, p 615). In the case at bar, the probation intake records are not being sought for the purpose of admitting them in evidence at a fact-finding hearing (see Family Ct Act, § 712, subd [f]; Matter of Michael M., 90 Misc 2d 303), nor are they being sought to use against the juvenile in any proceeding whatsoever (see Matter of Hecht, 90 Mise 2d 308, 309). The provisions relied on by the Department of Probation are inapplicable to the case at bar because the defendant intends to use the records to impeach the *378 credibility of the prosecution’s chief witness at trial and to create reasonable doubt as to his guilt.
There is no question, however, that probation intake records gathered in preliminary proceedings for the Family Court, as well ás all reports and memoranda prepared or obtained by the probation service, are deemed confidential information furnished to the court and are not open to indiscriminate public inspection (Family Ct Act, § 750, subd 1; § 166). All such records of Family Court proceedings, including case records managed by the Department of Probation for use by the court, are therefore sealed to insure their privacy (22 NYCRR 2830.9 [a]; 9 NYCRR 348.2 [e]). However, this confidentiality is not absolute. Such probation records are subject to disclosure as provided for by law or court order (Family Ct Act, § 750, subd 1; 9 NYCRR 348.4 [k]; Matter of Dorothy D., 62 AD2d 473, 476, supra), and the Legislature has explicitly given the court discretion in any case to permit inspection of any papers or records (Family Ct Act, § 166; Matter of Hecht, supra, pp 309, 310). Thus, proper requests for discriminating public inspection must be granted, and such records must be made available to any person having a legitimate purpose, including a Judge of another court, upon a subpoena duces tecum. Of course, the propriety of such a request by subpoena depends upon such factors as the official or person making the request, the purpose for which the information is needed, the possibility that the information might be improperly used, and whether overriding considerations of public policy mandate a breach of confidentiality (22 NYCRR 2501.3 [b], 2830.9 [b] [2]; Matter of Hecht, 90 Misc 2d 308, 310, supra; Matter of Michael M., 90 Misc 2d 303, 304, supra; Besharov, Practice Commentaries, McKinney’s Cons Laws of NY, Book 29A, Family Ct Act, § 166, p 104; Barsky and Gottfried, Practice Commentaries, McKinney’s Cons Laws of NY, Book 29A, Family Ct Act, § 750, 1978-1979 Pocket Part, p 240).
The initial question, therefore, is whether the defendant has satisfied the preliminary requirements for the issuance of a judicial subpoena duces tecum. If not, there would be no reason for this court to consider whether the privilege of confidentiality asserted by the Department of Probation should be breached. A subpoena duces tecum has never been intended to provide a means of discovery or to enable the party to ascertain the existence of evidence (Matter of Roman, 97 Misc 2d 782, 784; People v Coleman, 75 Misc 2d 1090, 1091; *379 Cataldo v County of Monroe, 38 Misc 2d 768, 770, affd 19 AD2d 852; Matter of Saratoga Harness Racing Assn. v Monaghan, 9 Misc 2d 868, 872). Historically, a subpoena duces tecum has been narrowly defined as a court process which directs an individual to appear together with books, documents, papers or other items in his possession so that by reference to these items he may give testimony relevant to the matter under inquiry. This definition has never included the right of counsel to inspect the items produced (see, e.g., Franklin v Judson, 96 App Div 607). However, the more enlightened view, held by the Federal courts for many years, is that properly subpoenaed materials should be produced before trial at a specific time and place for inspection by the moving party. Such a procedure would expedite the trial by enabling the party to decide in advance whether to use the materials at trial (Fed Rules Crim Pro, rule 17, subd [c] [US Code, tit 18, Appendix]; United States v Nixon, 418 US 683, 698-699; Bowman Dairy Co. v United States, 341 US 214, 220). This court believes that this position is consonant with the modern trend in criminal proceedings to eliminate the gamesmanship which has existed at criminal trials because of imbalances in tactical advantages and therefore make the trial a forum where all relevant evidence is fairly presented by well-prepared counsel for both sides.
In light of this trend and in order to require production prior to trial, the moving party must show that (1) the materials are relevant and evidentiary; (2) the request is specific; (3) the materials are not otherwise procurable reasonably in advance of trial by the exercise of due diligence; (4) the party cannot properly prepare for trial without such production and inspection in advance of trial and the failure to obtain such inspection may tend unreasonably to delay the trial; and (5) the application is made in good faith and is not intended as a general "fishing expedition” (Matter of Roman, 97 Mise 2d 782, 784, supra; People v Coleman, 75 Misc 2d 1090, 1091, supra; Blaikie v Borden Co., 47 Misc 2d 180, 182; Matter of Trombetta v Van Amringe, 156 Misc 307, 310; United States v Nixon, supra, pp 699-700; United States v Iozia, 13 FRD 335, 338).
On the record before this court, it is clear that the defendant has made a sufficient showing to justify the issuance of the judicial subpoena duces tecum for production before trial. The probable content of the materials sought by the defendant *380 is undoubtedly relevant to the pending criminal proceeding. At the preliminary conference at probation intake, the complainant must have identified the juvenile as her assailant, since the case remained active until she realized her mistake 11 days later. The Department of Probation was required by rules and regulations to record the complainant’s narrative of the underlying events, and therefore the details of the identification of the juvenile and possibly the reasons why she identified him are contained in the probation intake records. The parties disclose that the differences in the physical characteristics between the juvenile and the defendant are significant: approximately nine years in age, three inches in height, and 20 pounds in weight. The Department of Probation admits that "[tjhere is a considerable difference between [the juvenile] and [the defendant] in age, physical stature and appearance”. Since the crucial issue in the case against defendant is identification, there can be no doubt that these records, which contain critical information concerning identification, are relevant to the criminal proceeding. The recorded statements by the complainant bear directly upon her ability to accurately observe and recall traumatic events, and are essential to the defense for effective cross-examination. Moreover, the statements would be admissible at trial to complete impeachment of the witness if necessary. In addition, any admissions made by the juvenile and recorded in the probation intake records would certainly be relevant to the ultimate issue of guilt of the defendant. Such admissions might be admissible at trial as declarations against penal interest if the juvenile were not available to testify.
The request made by defendant for these records, confined to the probation intake records of one case, is sufficiently specific. The application has been made in good faith on a sound factual basis and cannot be characterized as an attempt at a general "fishing expedition”. Given the importance of the issue of identification, there is merit to the argument that the defendant cannot properly prepare for trial without the production of the records in advance of trial. Production at trial could result in a delay of the trial to allow proper preparation for cross-examination of the complainant and further investigation by defendant to uncover favorable evidence suggested for the first time by the records.
Finally, the materials sought by defendant are not otherwise procurable prior to trial by the exercise of due diligence. *381 Having revealed all of the relevant facts in its possession to the defense, the prosecution has no power or authority to obtain or release the probation intake records. The discovery provisions of CPL article 240 are inapplicable, since they do not give the People or defendant access to records in the possession of third parties. The defense is only permitted discovery of records within the possession, custody or control of the District Attorney (CPL 240.20, subd 1, par [b]; subd 2; subd 3). Thus, the only appropriate vehicle for production of these records is a judicial subpoena duces tecum (Matter of Roman, 97 Misc 2d 782, 784, supra).
Having determined that the requirements for the issuance of a judicial subpoena duces tecum are satisfied, this court must consider the constitutional bases upon which the defendant relies in order to determine whether the privilege of confidentiality of the probation intake records should be breached. Despite the exculpatory nature of the evidence sought by defendant, disclosure of the probation intake records is not mandated by the due process requirements set forth in Brady v Maryland (373 US 83, supra). In essence, Brady held that the suppression by the prosecution of exculpatory evidence violates due process. The essential purpose of the holding is to equalize access to available evidence and give both the defense and the prosecution the maximum information practicable with which to prepare cases. The case established a limited equal access requirement directed toward the balance of forces between the accused and the accuser (Wardius v Oregon, 412 US 470, 474; Calley v Callaway, 519 F2d 184, 224). The basic import of Brady is not that there is an abstract right by the defendant to obtain all evidence possibly helpful to his case, but rather that there is an obligation on the part of the prosecution to produce certain evidence actually or constructively in its possession or accessible to it in the interests of inherent fairness and the fair administration of justice (Calley v Callaway, supra, pp 223, 224).
In addition to exculpatory evidence directly in the possession or control of the prosecution, Brady has been applied to such evidence in the possession or control of investigative arms of the prosecution and prosecutorial agencies (United States v Bryant, 439 F2d 642, 647-648, 650: failure by Bureau of Narcotics to preserve tape recording crucial to defense), and agencies of government in any way involved in the offense charged or related transactions (United States v Deutsch, 475 *382 F2d 55, 57: Post Office personnel file of chief prosecution witness containing information concerning his character, where defendant accused of bribing him). This logical application of Brady rests on the fact that while such evidence is not technically within the possession of the prosecution, it is readily accessible and therefore within the control of the prosecution (United States v Trevino, 556 F2d 1265, 1272).
In contrast, there is no obligation on the prosecution to gather evidence from third parties which may be exculpatory but is unavailable to the prosecution and beyond its power to obtain (People v Lugo, 93 Misc 2d 195, 196; People v Coleman, 75 Misc 2d 1090, 1095, supra; Calley v Callaway, supra, pp 223, 224; United States v Deutsch, supra, p 57; United States v Hearst, 412 F Supp 863, 868). Thus, it has been held that there was no violation of due process by the failure of the prosecution to produce exculpatory evidence from the files of nonprosecutorial agencies of government (United States v Weidman, 572 F2d 1199, 1206-1207: files of NLRB showing that chief prosecution witness tried to bribe official; Calley v Callaway, 519 F2d 184, 219-220, 223, supra; United States v Ehrlichman, 389 F Supp 95, 96-97: testimony by witnesses at United States Congressional Committee investigations) or from private third parties (United States v Washington, 550 F2d 320, 328-330: reward offered by friends of deceased and bank robbed for any information concerning the crime; United States v Hearst, supra, p 868: expert witnesses to testify about psychology of victims of kidnappings).
Moreover, it is settled that the failure of the prosecution to provide the defense with the probation report of the chief prosecution witness who previously pleaded guilty in the same case for the purpose of impeachment at trial is not a violation of due process under Brady. The report, an informative document prepared by the probation service at the direction of the court for its guidance at sentencing, is not in the possession or control of the prosecution. Indeed, in preparing the report for the court, the probation service acts as an arm of the court (United States v Trevino, 556 F2d 1265, 1270-1271, supra; United States v Walker, 491 F2d 236, 238; see, also, United States v Dansker, 537 F2d 40, 60-61).
Defendant argues that the statutory and regulatory privilege of confidentiality of probation intake records is outweighed by his Sixth Amendment rights of confrontation and compulsory process. There is no question that the dual rights *383 of an accused in a criminal prosecution to be confronted with the witnesses against him and to have compulsory process for obtaining witnesses in his favor, guaranteed by the Sixth Amendment to the Constitution, are among the most fundamental and are essential to due process of law. Of course, cross-examination has always been the principal means of exercising the right of confrontation, for it allows the finder of fact to assess the believability of a witness and the truth of his testimony. The cross-examiner must therefore be able to probe the witness’ story to test his perceptions and memory and has traditionally been allowed to impeach or discredit the witness in a variety of ways, one of which is by revealing prior inconsistent statements. Similarly, the right of compulsory process is in plain terms the right to present a defense, and must necessarily include the right to compel the attendance of witnesses, offer their testimony as defendant’s version of the facts, and present all relevant evidence to establish a defense (Davis v Alaska, 415 US 308, 315-316; Chambers v Mississippi, 410 US 284, 294, 302; Washington v Texas, 388 US 14, 19; Douglas v Alabama, 380 US 415, 418). It is the manifest duty of the courts to vindicate these constitutional rights by assuring that all relevant and admissible evidence is produced (United States v Nixon, 418 US 683, 711, supra). Based on these principles, the defendant submits that the probation intake records of the juvenile are indispensable to test the reliability of the chief witness for the prosecution on cross-examination and to present favorable evidence, obtainable from only one source, to the jury.
Although there are no reported decisions in New York which have passed upon the relative weight of the confidentiality of probation intake records and the Sixth Amendment rights of an accused, cases in other contexts offer useful analogies. The first group of cases involves evidence sought either by the prosecution or the Grand Jury from third parties who claimed that such evidence was privileged under the Constitution, statutes or court rules. While these cases differ from the case at bar, they illustrate that privileges based on authority equal to or greater than that which created the privilege of the probation intake records can be overcome by institutions which do not benefit from the substantial constitutional rights relied on by the defendant at bar. Thus, the compelling State interest in Grand Jury investigations was held to be paramount to witnesses’ First Amend *384 ment freedom of association (People v Doe, 35 AD2d 118, 119: subpoena duces tecum for membership list and financial records of philosophical society; Matter of Shapiro v Chase Manhattan Bank, 84 Misc 2d 938, 945-946: subpoena duces tecum for bank records of nursing home related transactions) and First Amendment freedom of religion (People v Woodruff, 26 AD2d 236, 237-239, affd 21 NY2d 848: compulsion of testimony concerning the organization of religious group), both created by the Constitution. Similarly, the Grand Jury’s power to obtain information and evidence was held to outweigh specific statutory privileges protecting the confidentiality of State tax returns (Matter of New York State Tax Comm. v State Organized Crime Task Force, 89 Misc 2d 275, 276-277), and attorneys’ work products (Matter of Giovinazzo, 86 Misc 2d 751, 752-754: subpoena duces tecum for written statement by witness obtained by attorney who formerly represented targets of investigation). Court rules which made certain documents privileged from use in any criminal proceeding were also held subordinate to the power of the Grand Jury (Matter of Grand Jury Impaneled Jan. 21, 1975, 541 F2d 373, 375-376, 378-379, 382: subpoena duces tecum for retainer agreements required by rules to be filed with court by law firms).
Even the constitutionally created privilege protecting the confidentiality of Presidential communications must yield to the legitimate needs of the judicial process (United States v Nixon, 418 US 683, 703, 706-708, 710-711, 713, supra). Although Nixon also belongs to this first group of cases because the evidence was sought by the prosecution, the Supreme Court made it clear that the reasoning applies equally to evidence sought by the defense: "[0]ur historic commitment to the rule of law * * * is nowhere more profoundly manifest than in our view that 'the twofold aim [of criminal justice] is that guilt shall not escape or innocence suffer.’ Berger v. United States, 295 U.S., at 88. We have elected to employ an adversary system of criminal justice in which the parties contest all issues before a court of law. The need to develop all relevant facts in the adversary system is both fundamental and comprehensive. The ends of criminal justice would be defeated if judgments were to be founded on a partial or speculative presentation of the facts. The very integrity of the judicial system and public confidence in the system depend on full disclosure of all the facts, within the framework of the rules of evidence. To ensure that justice is done, it is impera *385 tive to . the function of courts that compulsory process be available for the production of evidence needed either by the prosecution or by the defense.” (United States v Nixon, supra, at pp 708-709.) The court in Nixon realized that the constitutional need for production of relevant evidence in a criminal proceeding is central to the fair adjudication of a criminal case and that a generalized interest in confidentiality cannot prevail over the fundamental demands of due process. Thus, a generalized assertion of privilege must yield to the demonstrated, specific need for evidence by the prosecution or the defense in a pending criminal trial (United States v Nixon, supra, p 713).
The second group of cases concerns evidence sought by the defense for trial and claimed to be statutorily privileged by the chief prosecution witnesses. Again, these cases are not directly analogous to the case at bar because the privilege of the probation intake records is being asserted on behalf of a third party rather than a prosecution witness. However, these cases are useful, nevertheless, for the probation intake records are also sought by defendant to impeach the credibility of the chief prosecution witness. The case at bar therefore involves the same constitutional rights of the accused which justified the breach of the privileges at issue in these cases. Thus, the defendant’s right to test the truthfulness and reliability of the complainant on cross-examination was held to outweigh the State’s policy interest in protecting the confidentiality of the physician-patient relationship (People v Lowe, 96 Misc 2d 33: medical and psychiatric records showing previous mental illness which could affect accuracy and perception). Similarly, the statutory privilege afforded personnel records of police officers was held subordinate to the defendant’s right to cross-examine those witnesses on relevant and material issues in the case (People v Gutterson, 93 Misc 2d 1105, 1108-1109: ability to estimate speeds of moving vehicles; People v Lugo, 93 Misc 2d 195, 196, 199, supra). Statutorily authorized administrative rules creating a privilege in certain records must also yield to permit a defendant to utilize those records for a legitimate purpose at trial (People v Sharp, 77 Misc 2d 855, 856: school records).
The State’s important policy interest in protecting the anonymity of juvenile offenders by preserving the confidentiality of delinquency adjudications must also give way to a defendant’s constitutional right to impeach the credibility of a *386 crucial prosecution witness claiming this privilege (Davis v Alaska, 415 US 308, 310, 319-320, supra). The court in Davis reasoned that the vital importance to the defendant of demonstrating that the witness was unbelievable in identifying him far outweighed whatever temporary embarrassment might result to the juvenile or his family by disclosure of his record. The court therefore concluded that the right of confrontation is paramount to this legitimate statutory privilege (Davis v Alaska, supra, pp 319-320). The fact that the manner of impeachment in Davis consisted of revealing bias rather than prior inconsistent statements, as the defendant seeks to do at bar, is insignificant, for both methods are instrumental to an attack on the credibility of an adversarial witness.
The final group of cases is most directly analogous to the case at bar because it involves evidence sought by the defense from third parties who claimed that such evidence was constitutionally or statutorily privileged. Thus, defendant’s Sixth Amendment rights of confrontation and compulsory process were held to outweigh claims by investigative reporters or authors that their interview materials were protected by privileges created by the First Amendment or statutes. Since the need for confidentiality asserted by reporters has been held subordinate to the prosecution’s need to present its case to the Grand Jury (Branzburg v Hayes, 408 US 665), the result can be no different when a defendant’s Sixth Amendment rights are at stake, for the rights to effectively cross-examine prosecution witnesses and prepare a defense are certainly entitled to equal, if not greater, protection than investigations of criminal activity (People v Le Grand, 67 AD2d 446, 453, 454; People v Zagarino, 97 Misc 2d 181, 187-188; Matter of Farber, 78 NJ 259; New York Times Co. v Jascalevich, 439 US 1317; State v St. Peter, 132 Vt 266; Brown v Commonwealth, 214 Va 755; United States v Liddy, 354 F Supp 208, 213, 215; see People v Monroe, 82 Misc 2d 850, 856-857; Rosato v Superior Ct., 51 Cal App 3d 190, 213, 214).
The case in this group which is closest in point to the case at bar is United States v Chacon (564 F2d 1373). In Chacon, the defendant and a juvenile were arrested and charged with having committed certain crimes. The juvenile was tried first and acquitted. Pursuant to title 18 (§ 5038, subd [a]) of the United States Code, the file and trial transcript of the juvenile delinquency proceeding were sealed. The statute creates a privilege of confidentiality as to the identity of the juvenile *387 (US Code, tit 18, § 5038, subd [d], par [2]), and prohibits the release of the record of proceedings except in enumerated circumstances (US Code, tit 18, § 5038, subd [a], pars [l]-[5]). Before defendant’s trial, he moved for production of the sealed trial transcript of the juvenile delinquency proceeding for possible impeachment purposes in light of the juvenile’s acquittal and because the transcript was the sole source of such information. The motion was denied by the trial court. This factual setting is close to the case at bar even though the juvenile in Chacon (supra) was arrested and charged as a codefendant because his acquittal placed him in the same position as the juvenile at bar who was exonerated after arrest by the complainant. In addition, the Federal statutory scheme is similar to the parallel provisions in New York which create privileges, sealing requirements, and conditions for disclosure.
The court held that although a request by a third party in a separate proceeding was not specifically enumerated by the statute as an exception to the rule of nondisclosure, the interest in providing a defendant with a fair trial is at least as substantial as those interests recognized by the enumerated exceptions. The court therefore ruled that the statute empowered the trial court to inspect the sealed juvenile record and disclose material evidence to the defense. However, the court limited its holding to the particular facts of the case, i.e., where the juvenile was himself involved in the transaction which formed the basis for the prosecution of the defendant, even though the juvenile was not a party to the action.
The concurring Judge in Chacon (supra) did not decline to address the constitutional issues raised by defendant, and forcefully reasoned that defendant’s Sixth Amendment right of confrontation required the production of materials needed to cross-examine prosecution witnesses notwithstanding statutory provisions for nondisclosure of juvenile proceedings. He concluded, therefore, that the case was controlled by Davis v Alaska (415 US 308, supra) and that transcripts of juvenile proceedings were not available to a third party involved in a separate proceeding unless mandated by the requirements of the Sixth Amendment.
After weighing the statutory privilege of confidentiality of probation intake records against the constitutional need for relevant evidence by defendant, this court concludes that to honor the privilege to withhold such evidence from the trier of *388 fact would, undermine due process and impair the basic function of the courts. This court therefore invokes the sound proposition that where statute and Constitution collide, the statute must yield (Matter of Farber, 394 A2d 330, 336, 337, 351, 78 NJ 259, —, supra; United States v Narciso, 446 F Supp 252, 270-271). Nonconstitutionally based privileges and other governmental interests must give way to constitutional concerns (Chambers v Mississippi, 410 US 284, 298, 302, supra; Roviaro v United States, 353 US 53; People v Goggins, 34 NY2d 163; State v St. Peter, 132 Vt 266, 269, supra).
This court is mindful, however, that the probation intake records may contain matters which are not relevant and admissible at trial. The court can best protect these privileged matters from unwarranted disclosure by in camera inspection and redaction, long held to be highly appropriate and useful methods of dealing with confidential materials (see Kerr v United States Dist. Ct., 426 US 394, 405-406; United States v Nixon, 418 US 683, 714, supra; United States v Chacon, 564 F2d 1373, 1375, supra; Matter of Roman, 97 Misc 2d 782, 785, supra).
For the foregoing reasons, the motion to quash the judicial subpoena duces tecum is denied. The New York City Department of Probation is directed to provide the subpoenaed materials for the court to examine in camera forthwith.