OPINION OF THE COURT
Harold Baer, Jr., J.
The defendant, Warren Essner, has been charged in a three-count indictment with (1) issuing a false financial statement (Penal Law, § 175.45), (2) falsifying business records in the first degree (Penal Law, § 175.10) and (3) violating section 352-c of the New York General Business Law (Martin Act).
The People allege that the defendant, while a partner in the accounting firm of Arthur Andersen & Co. (Andersen), issued a financial statement which falsely represented the subordinated debt and equity position of Drysdale Government Securities, Inc. (DGSI) as of the opening of business on February 1, 1982. Further, the People allege that the defendant misrepresented that Andersen had examined the statement in accordance with generally accepted auditing standards and accounting principles.
In preparation for a fall trial, the defendant subpoenaed certain records from the Chase Manhattan Bank, N. A. (Chase), its lawyers, Milbank, Tweed, Hadley & McCloy, the Manufacturers Hanover Trust Co. (MHT), its lawyers, Simpson, Thacher & Bartlett, and from Peat, Marwick, Mitchell & Co. (PMM), accountants who will testify for the People at trial. Those records include certain transactional documents between the banks and Drysdale Securities Corp. (DSC) and DGSI, deposition testimony from the civil *832 action brought by the banks against DSC and DGSI and Andersen, personnel and credit files, and materials shared by the banks and PMM with the District Attorney’s office.
In order to defeat a motion to quash, the party seeking production must show, inter alia, that “the materials are relevant and evidentiary”. (People v Price, 100 Misc 2d 372, 379.) This test may necessitate an examination by the court of the elements of the crimes charged. Here, the course of the trial and the motion to quash turn on whether reliance by a bank or banks on the statement of the defendant is an element of one or more of the crimes charged. I find that it is not.
To begin with, defendant asserts that the subpoenaed documents will help prove that the banks did not rely on the financial statement prepared by Essner, that any losses sustained by the banks were due to their own careless investment decisions, and that without such reliance there can be no crime (3, 4, 5, 7, 8 & 9).[1] Thus, the threshold question for this motion and for trial is what, if any, role does the banks’ reliance or lack of reliance on the financial documents play in any one or more of the three counts of the indictment.
Count one, issuing a false financial statement (Penal Law, § 175.45), entails three elements: (1) intent to defraud, (2) a knowingly made written statement purporting to describe the financial condition of some person[2] and (3) an inaccuracy in some material respect.
Although on its face, section 175.45 of the Penal Law makes no mention of reliance, defendant points to the predecessor statute, section 1293-b of the Penal Law, entitled “obtaining property or credit by use of false statement.” That statute required that the false statement be made with the “intent that it shall be relied upon”. (See former Penal Law, § 1293-b, subd 1.)
Only scant legislative history can be found for either section 175.45 or its predecessor. The New York State *833 Commission on Revision of the Penal Law and Criminal Code reports only that “[t]his section substantially restates former Penal Law § 1293-b.” (Study Bill of the proposed New York Penal Law [1964], p 366.) The interim report of the commission takes note only of the fact that the title of the sections was changed. (See Third Interim Report of State of New York Temporary Comm on Revision of Penal Law & Criminal Code [NY Legis Doc, 1964, No. 14], pp 12-13.)
At first, the title change appears to be onfy one of form, but upon closer examination, it seems a substantive change. The former statute, section 1293-b of the Penal Law, was found under the “Larceny” title and the act was delineated as the taking of another’s property; today it is covered by section 155.00 et seq., again under “Larceny”. The section charged in the first count of this indictment, section 175.45 of the Penal Law, is nowhere to be found amongst the larceny sections. By the change in title and removal from the larceny section of Penal Law, it is fair to infer that the Legislature intended to remove reliance as an element. One commentator makes this abundantly clear and posits liability on the “bare issuance of the statement with the indicated intent, regardless of the success or failure of the fraudulent endeavor.” (See Hechtman, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law, § 175.45, p 320.) This section then, as presently constituted, punishes the act of issuing a false financial statement where the perpetrator is proven to have had the requisite intent to defraud and without regard to reliance by the victim.
Turning next to the Martin Act, count two of the indictment, that statute prohibits specific acts, including a false representation, “where engaged in to induce or promote the * * * sale * * * or purchase * * * of any securities * * * regardless of whether * * * sale * * * or purchase resulted.” (General Business Law, § 352-c, subd 1, par [c].) That no sale in fact was made, does not negate criminal responsibility. (People v Electro Process, 284 App Div 833, 834.)
In People v Royal Securities Corp. (5 Misc 2d 907), a civil action brought by the Attorney-General to enjoin the de *834 fendants from engaging in the securities business, the court held “plaintiff need not prove reliance by the purchasers of the securities involved on the fraudulent representations” (supra, at p 909). Put another way, the thrust of the statute looks solely to the “acts or practices” of the alleged culprit and not to the conduct of the victim. (See, e.g., People v Barysh, 95 Misc 2d 616.) In Barysh, the defendants, indicted under the Martin Act, allegedly entered option trades in the transaction journal of the American Stock Exchange, when, in fact, there had been no such trades.
In arriving at its decision on the single issue presented — whether or not intent to defraud is an element of a Martin Act violation — the court stated that the statute “clearly does not require several of the common-law elements of fraud, namely, reliance and scienter” (95 Misc 2d, at p 621).
By contrast, but not surprisingly in a private civil action for damages, reliance is an element of the charge, “for otherwise a defendant could be held liable under § 352-c even to purchasers whose damage could not be traced to his wrongdoing.” (Herzfeld v Laventhol, Krekstein, Horwath & Horwath, 378 F Supp 112,130 [SDNY], affd in part, revd in part 540 F2d 27 [CA 2d].) Accordingly, it seems clear that count two, the Martin Act count, does not contain the element of reliance.
Reliance then is not an element of either charge,[3] and documents subpoenaed to prove or disprove reliance by the banks are immaterial and outside the test laid down in Price (supra).
The defendant next argues that to negate materiality he must be allowed to show that the statement was not of significance to a reasonably prudent investor; that such an investor would not use a statement such as the one issued here to form a material part of the total mix of information which goes into the decision-making process. Further, the defendant contends that the statement was so incomplete and insubstantial that it lacked the capacity to affect any decision by the banks.
*835 A Martin Act violation is established “regardless of whether issuance, distribution, exchange, sale, negotiation or purchase resulted.” (General Business Law, § 352-c, subd 1, par [c].) Consequently, the impact of the proscribed conduct, i.e., the role of the statement vis-a-vis the banks, is not at issue here and therefore irrelevant.
The same argument when applied to count one has an initial appeal. There, the statute (Penal Law, § 175.45, subd 1) requires that the “written instrument which purports to describe the financial condition * * * of some person * * * [be] inaccurate in some material respect”.
Neither the court nor the parties to this litigation have unearthed authority for the definition of materiality as it is used in section 175.45 of the Penal Law. Consequently, the court has turned to an analogous Federal statute (US Code, tit 15, § 77q, subd [a], par [2]). There, we read, it is “unlawful for any person in the offer or sale of any securities * * * to obtain money * * * by means of any untrue statement of a material fact”. And, in Securities & Exch. Comm. v Paro (468 F Supp 635, 646 [NDNY]) the court wrote “a fact is deemed ‘material’ if its disclosure would have been viewed by a reasonable investor as having significantly altered the ‘total mix’ of information made available.” (See, also, TSC Inds. v Northway, Inc., 426 US 438, 449.) In Paro, the court went on to find that “materiality of a misstatement or omission [requires a showing] that in all probability the omitted or misrepresented facts would, in view of the circumstances, have assumed actual significance in the deliberations of the reasonable shareholder.” (468 F Supp, at p 646.) The Federal statute, section 77q, punishes the obtaining of money by misrepresentation of a material fact in the purchase or sale of securities. In such cases, there must be reliance by the investor similar to larceny by false pretenses. (Penal Law, § 155.05, subd 2, par [a].) There, the victim must have relied, in parting with his property, on “an intentional false statement concerning a material matter of fact”. (People v Miller, 169 NY 339, 351; see, also, People v Baker, 96 NY 340, 348; Hechtman, Practice Commentaries, op. cit.) In the case at bar, under New York law there need be no “victim,” ergo, reliance is neither an element of the *836 crime nor a valid yardstick with which to test the materiality of a false statement.
The purpose of an accountant’s opinion is to properly reflect the financial condition of the company audited, and materiality must be tested on that basis. Again, any other definition of materiality, such as the one urged by the defendant, would change the goal of the statute which is directed solely at punishing the publication of a false financial statement.
Finally, the defendant urges that “evidence that the financial statement * * * was not and could not have been material to the decision-making process of the financial institutions will have additional probative value by negating any possible ‘intent to defraud.’ ” Again, the defendant fails to cite any authority for this conclusion, nor has the court found any support for such a proposition.
Turning to the subpoena itself, the parties met subsequent to oral argument and, at the court’s request, narrowed the items in contention. As a consequence, as I understand it, items numbered 1, 2, 3, 4, 5, 7 and 8 remain unresolved. In accordance with this opinion, the motion by the banks and their attorneys to quash the subpoena is granted as to items 3, the personnel records, 4 and 5, the credit information, and 8, the internal reports. The “transactional” documents (2), i.e., computer listings, transaction and repricing tickets, have been subpoenaed to “review and cross-examine the PMM report on the issue of falsity, and to reconstruct Drysdale’s financial condition.” Although the nexus between these transactional materials and the alleged falsity of the statement is somewhat tenuous, “[w]here the liberty and reputation of a defendant are in jeopardy, every reasonable opportunity and facility should be afforded him in the preparation of his case.” (People v Utley, 77 Misc 2d 86, 96.) Hence, as to item 2, the motion is denied and the records will be produced. The argument for the production of the depositions, item 1, falls on the other side of the line and as to this item, the motion to quash is granted. The depositions requested deal with the affirmative defenses of bank negligence and the absence of reasonable reliance in two pending Federal civil *837 suits (Chase Manhattan Bank v Drysdale Securities Corp., 587 F Supp 57; Manufacturers Hanover Trust Co. v Drysdale Securities Corp., 82 Civ 6622). Since, in accordance with this opinion those issues are irrelevant to the charges before me, they fall outside the doctrine enunciated in Price (100 Misc 2d 372, supra). As a consequence, at least at this juncture, it is unnecessary to address the question of the protective order issued by Magistrate Buchwald and whether it can inhibit this court, in a criminal case, from compelling their production for use by the defendant in his defense. It should be mentioned, however, that the court understands that Chase has agreed with the defendant that if any Chase employee is called as a witness at trial, their previous deposition testimony will be provided in advance to the defendant.
One caveat, if the deposition testimony is related to the PMM report, then it is clearly relevant and material and those portions must be produced. The outstanding items in the PMM subpoena are PMM 4 and 5. The latter item, as clarified in a letter from defense counsel dated April 24, 1984, seeks PMM “notes separate and apart from materials relating to the PMM report” which apparently were made in PMM’s capacity as a “consultant for Chase with the federal lawsuits.” PMM 5 appears to correspond with 7. To the extent either call for documents relating to the PMM audit report, those documents should, as agreed, be produced. Otherwise, the motion to quash is granted as to 7 and PMM 5 on the ground of work-product privilege.
The final item, PMM 4, requests any correspondence between PMM and counsel for the banks regarding the PMM report. Production is challenged on the grounds of work-product privilege. “Because it affords an unqualified privilege, the commentators agree that the ambit of CPLR 3101 (subd [c]) is to be construed narrowly to include only those materials prepared by an attorney which contain his analysis and trial strategy”. (Kenford Co. v County of Erie, 55 AD2d 466, 470.) While “correspondence” has been held to be within the purview of the privilege when it reflects an attorney’s thoughts (see Hickman v Taylor, 329 US 495, 511), the court went on to say that nonprivileged documents may be discovered for purposes of impeachment. *838 Therefore, PMM shall produce for this court’s in camera inspection any documents which meet the specifications of PMM 4.
Production of any document not quashed shall be made within 10 days from the date of this order. The trial is to commence on September 17, 1984.

. Numbers refer to paragraph numbers in the subpoenas served on Chase, MHT, Milbank and Simpson. Numbers following PMM refer to paragraph numbers in the subpoena served on PMM.

. Under the Penal Law, a person is defined as “a human being, and where appropriate, a public or private corporation”. (Penal Law, 8 10.00, subd 7.) DGSI is therefore a “person” within the meaning of that statute.

. Defendant does not argue that reliance is an element of the third count of the indictment — falsifying business records in the first degree. (Penal Law, 8 175.10.)