Manuel G. Guerreiro, J.
This proceeding was initiated on April 28,1969. The petition alleges that the respondents, acting in concert, fatally stabbed one Francisco Sanchez, an act which if performed by an adult would constitute the crime of murder. After the homicide was discovered on April 26,1969, the respondents were immediately taken into custody. The youths first were questioned at their neighborhood police precinct, then they were taken to Youth House where they remained until their release in December, 1969. After the passage of two years, the entertaining of time-consuming pretrial motions and an omnibus pretrial hearing both on the issues of probable cause and suppression the case is now ready for trial.
Counsel for the respondents move to dismiss the petition on the ground that there is no longer need for court intervention. The passage of time, notably two years in the prime of youth has given the respondents the opportunity to begin their development into mature and law abiding members of the community. No question of right to speedy trial has been raised, and, indeed, would be inappropriate considering the nature and source of much of the delay.
In support of their position, respondents’ attorneys cite section 731 of the Family Court Act which requires that a petition to adjudicate a person a juvenile delinquent must allege that ‘ ‘ the respondent requires supervision, treatment or confinement”.
If a fact-finding hearing is held, and if a fact finding is made, the court must then hold a dispositional hearing 11 to determine whether the respondent requires supervision, treatment or confinement” (Family Ct. Act, § 743).
“ The finding of fact as to conduct alone may not support an adjudication either of ‘ delinquency ’ or of a ‘ person in need of *454 supervision i.e. ‘ pins This petition will be dismissed without any adjudication of 1 delinquency ’ or ‘ pins ’ if the probation and psychiatric reports indicate that the boy is not in need of supervision, treatment or confinement under court order. (Family Ct. Act, §■§ 743, 745, 752). In this respect, a finding of delinquency or pins requires a basis of a finding of a condition showing need for the attention of the court, in addition to the mere conduct alleged, and in this respect differs from the criminal court procedures for older persons. The Family Court does not find a child 1 delinquent ’ or 1 pins ’ unless there is need for its rehabilitative or protective functions.” (Matter of Ronny, 40 Misc 2d 194, 197.)
In such case, both because of limited judicial resources and the potential effects of a rehashing of the events in question at a fact-finding hearing, it would be inadvisable to proceed with a fact-finding hearing if there would be an inevitable dismissal of the petition after the dispositional hearing.
Furthermore, the Family Court is not a Criminal Court with punitive objectives. The purpose of this court is to rehabilitate children and to make services available to them, not to vindicate private wrongs. The legislative committee which drafted the Family Court Act stated: “ The Committee concluded that it would be unwise, at this time, to give the Family Court the extensive powers given the criminal courts under the Penal Law of the State of New York. * * * In the Committee’s view, while a due process of law should be used in the Family Court, criminal powers and procedures would be inconsistent with the proper development of the Family Court, during its formative period, as a special agency for the care and protection of the young and the preservation of the family. * * * Early iri the history of the juvenile court movement, there was agreement that juvenile delinquency proceedings should be ‘ civil ’, not ‘ criminal ’. This agreement was based on a sense of a child’s exuberance and vitality and the stress of the early years of life. The restraints and disciplines of adulthood have not yet been established. The possibilities of change are seemingly great. And so the decision was made to avoid a criminal conviction for the young and to shape the law and provide a court to guide and supervise, rather than punish, children in trouble. The Committee adheres to that decision.” (Report of the Joint Legislative Committee on Court Reorganization, 1962 McKinney’s Session Laws [vol. 2], pp. 3428, 3430, 3434.)
It is, of course, not often that the lack of need for the court’s “ supervision, treatment or confinement ” will be evident before a dispositional hearing, which, in the normal course of events, *455 would follow a fact finding. However, under the exceptional circumstances of cases such as this, consideration of the prohar bility of jurisdiction under subdivision (c) of section 731 should be given, prior to a fact-finding hearing, for all the afore-mentioned reasons. (The office of the Corporation Counsel assents to this view.)
The form of this consideration will necessarily vary from case to case. The special facts and circumstances of this case were presented at an adversary hearing at which all parties were permitted to present evidence. In addition, the court-liaison officer of the Probation Department was directed to have the files searched and to ascertain for the court if any of the respondents were known to this court subsequent to the filing of the petition in question and the status of any pending litigation.
Given the extraordinary nature of a procedure such as this, the burden of going forward, at least, must necessarily be on the respondents.
On the basis of the liaison officer’s report and the evidence presented at the hearing, it appears:
Edwin R. was rearrested following the Family Court action, tried before the Criminal Court, and is presently incarcerated in the Riker’s Island Detention Center. He no longer requires the intervention of the Family 'Court.
The remaining respondents have had a comparably fine adjustment. This adjustment is due in great measure to the assistance and fine direction they received from their respective attorneys. These young attorneys were counselors in every sense of the word ably serving their clients ’ diversified needs and encouraging their clients to more suitable objectives and goal-oriented lives. The efforts of these lawyers notably were combined with those of Marilyn Shafer, a social worker at MFY Legal Services, Inc., who has worked with all the respondents from January, 1970 until the present time and in addition, with regard to Edwin M.’s social worker, Mr. Kojo Odo, of Boys Harbor, and Toni Nagel of Bellevue Hospital, Dr. Chess, a psychiatrist at Bellevue Hospital and Mr. Cecil Bruckman, a specialist in education. Miss Shafer has prepared innumerable detailed studies of the boys and their adjustment. She also testified before this court. Letters and reports have been contributed by the afore-mentioned individuals and others who have come into direct contact with the boys.
Edwin M., at the inception of the case possessed a cognitive (reasoning and knowledge) defect making him incapable of exercising independent judgment and reasoning beyond a superficial level. Edwin became very involved initially in the program *456 at Bellevue Hospital, attending classes there and seeing the social worker on a regular basis. Edwin was subsequently-referred to Boys Harbor by his lawyer, Bichard Asche, who felt the educational and recreational program offered would benefit his client. A close relationship developed between Edwin and his social worker at the Harbor, Kojo M. Odo. Mr. Odo found the boy’s development so good that he recommended him for the leadership program which trains junior summer camp counselors to which Edwin has been accepted. The Executive Director of Boys Harbor, Bichard L. Williams, in a letter to this court dated April 2,1971, reported that Edwin has adjusted quite well and is a contributing member of the Boys Harbor environment. He also recommends that Edwin continue at the Phoenix School. The response of Adele Martin, a special teacher at the Phoenix School, in a letter dated March 20, 1971, reported that Edwin’s progress has been uneven, but they will still consider him in their program.
William S. is the only respondent who has had a later encounter with Family Court. A petition was filed against William on June 30, 1970 and dismissed on August 7, 1970. The basis of the allegation of the petition was an assault by William upon his girlfriend while inebriated. ■ According to the most recent reports of Miss Shafer, William can presently be said to have made the most dramatic behavioral adjustment in school and in the community. He now communicates better and shows no evidence of retardation. Drinking has been eliminated from William’s life. William attends the Manhattan School for Boys. Mr. Blacksher, the guidance counselor, confirmed that William is not a behavior or academic problem. He felt that improvement could be shown in the areas of attendance and lateness.
Anthony H. also attends the Manhattan School for Boys where his behavior and school work are satisfactory. Anthony was described by Mr. Blacksher as “a pleasant and personable young man ’ ’. The guidance counselor stated however that as in William’s case a problem existed with regard to habitual absences and tardiness.
The last respondent, Victor H., is currently enrolled in the co-operative work-study program at Seward Park High School whereby he alternates weekly between school and a position as a maintenance worker with the New York City Parks Department. Prior to his transfer to the work program this semester Victor was absent approximately one third of the fall term. Victor was admitted to the co-operative program because his poor academic and behavioral problems indicated that he was receiving no benefit from the normal academic program although he was only *457 a tenth grader and the program is normally only opened to juniors and seniors. School personnel with personal knowledge of Victor agreed that the work program was the only chance of reaching him, but that it was still too early to offer a prognosis for future progress.
William, Anthony and Victor have all been attending Tompkins Square Community Center in the evening. Corporation Counsel’s investigator spoke to the police in the respondents’ neighborhood who reported that the youths now have a pacific reputation in the community.'
Now, the appropriate inquiry into the facts and circumstance ^ of the case having been made, it is adjudged, that none o. respondents have demonstrated any anti-social behavior exu* for truancy; that the omnibus hearing, having- consumen numerous court hours and continued use of court time, serves little worthwhile purpose in that, should fact-finding and dis-. positional hearings be held, the best result would be the continued supervision of the respondents which is now being adequately performed; and it is further ordered, that the petitions be and hereby are dismissed.