Felice K. Shea, J.
This juvenile delinquency proceeding pursuant to article 7 of the Family Court Act raises two questions of first impression: (1) Does the respondent have a right to probation intake procedures and the possible adjustment of his charges after a petition against him has been filed? (2) Does the petitioner have a right to a hearing in a delinquency proceeding? On the facts before it, this court finds in the affirmative as to the first question and in the negative as to the second question.
(a) The Facts.
Charles C., who is 10 years old, was arrested and released on his own recognizance to appear in Family Court along with four other youths on charges of stealing "a wallet containing $2 in lawful U. S. currency and several credit cards * * * [and being] knowingly and unlawfully in possession of aforesaid *390 property”, acts which, if committed by an adult, would constitute the crimes of grand larceny and criminal possession of stolen property.
On the return date of this matter, Charles did not appear. However, the other youths, their parents and the arresting officer were interviewed by the court’s probation intake service. The arresting officer filed a petition against Charles and the court issued a warrant for his arrest.
Eight days later, Charles C. and his mother voluntarily appeared before this court. Mrs. C. testified that she had been ill on the day that Charles had been scheduled for court, that no one else had been available to take him, and that Charles was too young to go to court by himself. Over the objection of the Corporation Counsel who represented the absent petitioner, the court referred respondent and his mother for an interview with the court’s probation intake service.
Later the same day, a report was given to the court by a representative of probation intake. Charles had no prior contacts with the court, came from an intact and supportive family, and had no unusual problems at home or at school. Charles denied taking part in the alleged theft and stated that he no longer associated with the youths with whom it was alleged he had acted in concert. The probation record showed that the complainant had not appeared at the previous probation interview and that the probation office had tried to reach her but had been unsuccessful. The arresting officer had indicated at the prior interview that he would have no objection to a recommendation of adjustment. On these facts, probation would have recommended adjustment — that is, diversion from court without the filing of a petition — had Charles appeared initially. The probation representative testified further that were the court to hold a hearing and make a finding, probation would recommend that the petition be dismissed, on the ground that Charles does not require treatment, supervision or confinement.[1]
(b) The Right of Respondent to Intake Procedures.
Rule 7.3 of the Family Court.(22 NYCRR 2502.4), authorized by section 734 of the Family Court Act, provides that the probation service may confer with any person seeking to file a delinquency petition and with the potential respondent and *391 other interested persons and attempt to adjust suitable cases before a petition is filed.
Probation intake is a hallmark of the juvenile justice system. Its purpose is to screen from the court those youngsters who, because of age, lack of prior record, good adjustment at home and in the community or other factors could derive no benefit from court involvement and, indeed, might be damaged by it.[2] Adjustment at probation intake also is a device to shield an overburdened Family Court from those cases which do not require court action. The benefits of diversion, in a proper case, to child and community alike, are unquestioned.[3]
Subdivision (b) of section 734 of the Family Court Act states that "The probation service may not prevent any person who wishes to file a [delinquency or supervision] petition * * * from having access to the court for that purpose.” This provision affords a person authorized to originate a delinquency proceeding[4] the right to bring the matter to court.[5]
In this case, complainant failed to appear at the initial probation interview and has not responded to the efforts of the probation department to reach her. The court finds that her rights under subdivision (b) of section 734 of the Family Court Act have been waived. Petitioner has stated that he would not have objected to adjustment of this case had Charles been present at the initial interview.
The issue, then, is whether a child forfeits the substantial possible benefits of adjustment at intake merely because he failed to appear in court on one occasion for reasons which were beyond his control. This court finds no support in the Family Court Act for such a harsh result, and reaffirms its *392 conclusion that it was proper, in this case, to refer respondent to probation intake after the filing of the petition.
(c) The Right of Petitioner to a Trial.
The question remains whether the statutory right to file a petition gives petitioner the further right to a trial. The Corporation Counsel argues that both petitioner and complainant have the right to a hearing and that, without their consent, this petition should not be dismissed.
A delinquency proceeding is civil in nature[6] in that its purpose is not punitive and it is governed procedurally by the CPLR, to the extent its provisions are appropriate, when the Family Court Act and the Administrative Board of the Judicial Conference are silent.[7] However, the Family Court Act itself provides protections to juveniles which have their origins in the criminal law — i.e., the right to remain silent (Family Ct Act, § 741, subd [a]) and the right to counsel (Family Ct Act, § 241). Moreover, the United States Supreme Court has accorded children many of the Fourteenth Amendment due process rights available to adult criminal defendants. (Kent v United States, 383 US 541; Matter of Gault, 387 US 1; Matter of Winship, 397 US 358; cf. McKeiver v Pennsylvania, 403 US 528.) The New York Court of Appeals has recognized that delinquency proceedings, which may result "in a loss of personal freedom, are at the very least quasi-criminal in nature.” (Matter of Gregory W., 19 NY2d 55, 62.)
The New York courts have examined the "problems posed by the hybrid nature of the proceeding” (Matter of William S., 70 Misc 2d 320, 322) a number of times and in varying contexts. Basic rights of children in the adjudicatory phase of a delinquency action have received the protection of the. criminal law. (Matter of Robert P., 40 AD2d 638; Matter of Anthony S., 73 Misc 2d 187; Matter of Ronald G., 68 Misc 2d 80; Matter of Williams, 49 Misc 2d 154.) In considering the standard to be applied in the preadjudicatory phase, the courts have been less consistent. (Matter of Jeffrey C., 81 Misc 2d 651; Matter of Santos C., 66 Misc 2d 761; Matter of Marie W., 62 Misc 2d 585; cf. Matter of Anthony S., supra; Matter of White, 70 Misc 2d 541.)
Looking at the reality behind petitioner’s title, it becomes apparent that in a delinquency matter, he is a nominal party *393 who represents the interest of the community. The petitioner does not have a personal interest in the outcome, a personal right to be vindicated or protected, such as a party to a civil action must have. His status is like that of a witness in a criminal proceeding, who has no right to force a prosecution.[8]
In the case at bar, as in many other cases, the arresting officer verified the petition because complainant was not in court. Had complainant been available, she doubtlessly would have been the petitioner. There would be no logic in allowing legal rights to flow from such an arbitrary circumstance.
Nor would there be logic in treating both the arresting officer and the complaining witness as parties on the theory that both are authorized by section 733 of the Family Court Act to originate petitions. A reading of the statute discloses that any witness to the alleged criminal activity is also a proper petitioner; yet surely the Legislature could not have intended that every witness was to be given the status of a party.
In determining whether a hearing should be held in a delinquency case, the court should give weight to the wishes of petitioner and complainant, but it may not permit them to have the deciding voice. Their knowledge pertains only to the facts arising from the alleged delinquent act. The court also must consider and apply section 745 of the Family Court Act which mandates that before a child can be adjudged a delinquent, there must be a need for court intervention — the child must be found to be in need of supervision, treatment or confinement. (Matter of Ronny, 40 Misc 2d 194, 197; Midonick, Children, Parents and the Courts: Juvenile Delinquency, Ungovernability and Neglect 16-17 [1972].)
For the foregoing reasons, the court holds that the petitioner in a delinquency proceeding is not a party with an absolute right to a trial and that the complaining witness is similarly without that right.
The court is mindful that victims of juvenile crime have many legitimate complaints, particularly with regard to the lack of consideration shown for their loss of time and money in coming to court. The answer cannot lie in allowing the crime victim an unqualified right to a day in court. It must be *394 found in establishing programs to assist the victim in his contacts with the justice system, whether adult or juvenile.[9]
In view of probation’s report that a recommendation of dismissal would be made at disposition even were a finding to be made, and considering that Charles C. is 10 years old, has never been in trouble before and has no school, family or social problems which call for court action, this court finds it inadvisable to hold a hearing. A trial would accomplish no useful purpose, would waste valuable judicial resources, and would subject the respondent to the stress of a court proceeding and a possible juvenile record. No countervailing public policy or community interest favors a trial in this case.[10]
Accordingly, the court grants respondent’s motion to dismiss the petition without the consent of either petitioner or complainant. The court orders further that the petition, and all court records arising from the petition, be expunged. (Matter of Terrance J., 78 Misc 2d 437; Matter of Smith, 63 Misc 2d 198.)

. Section 743 of the Family Court Act; Matter of Ronny (40 Misc 2d 194, 197).

. Comment of Joint Legislative Committee on Court Reorganization, McKinney’s Cons Laws of NY, Book 29A, p 310; Besharov, Juvenile Justice Advocacy 12-14, 157-169 (1974); Paulsen and Whitbread, Juvenile Law and Procedure 125-126 (1974).

. In Matter of Gault (387 US 1, 31, n 48) the United States Supreme Court pointed out that "The Nat’l Crime Comm’n Report recommends that 'Juvenile courts should make fullest feasible use of preliminary conferences to dispose of cases short of adjudication.’ ” Nationwide, more than half of all juveniles referred to court are diverted from the court system at intake. 1973 H.E.W. Office of Youth Development, Juvenile Court Statistics 7, Table 2 (1975); Wakin, Children Without Justice 40 (1975).

. See section 733 of the Family Court Act. Both a peace officer and the crime victim are authorized to file.a delinquency petition.

. It is arguable that "access to the court” in subdivision b of section 734 of the Family Court Act means merely that should a potential petitioner insist on the right to file a petition, against the recommendation of probation, such person may request the court to determine whether a petition should be filed. See Wallace & Brennan, Intake and the Family Court (12 Buffalo L Rev 442, 447).

. See section 781 of the Family Court Act.

. Section 165 of the Family Court Act.

. Support for this view can be found in Rapoport v Berman (NYLJ, July 10, 1975, p 14, col 8), a PINS case, where the Supreme Court, Kings County, temporarily enjoined a Family Court Judge from denying a Law Guardian the right to interview petitioners for the purpose of preparing to defend juvenile clients.

. See study project announced by the State Administrative Judge and the Institute of Judicial Administration at New York University School of Law (Joint Study Set on Courts, Juries, Fees, NYJL, July 2, 1975, p 1, col 6).

. See Matter of Edwin R. (67 Misc 2d 452), where a delinquency petition alleging murder was dismissed before trial because the court found that, due to the passage of time, respondents evinced no need for supervision, treatment or confinement. Cf. CPL 210.40 providing for the dismissal of an indictment "in furtherance of justice * * * even though there may be no basis for dismissal as a matter of law,” applied in People v Carlo (NYLJ, July 11, 1975, p 10, col 6).