OPINION OF THE COURT
Daniel D. Leddy, Jr., J.
Does the petitioner-complainant in a juvenile delinquency proceeding have an absolute right to a hearing on his petition *1113 even when the court is satisfied, prior to fact finding, that a dismissal would be in the best interests of the child and not inimical to the protection of the community?
The instant petition alleges that the respondent committed acts which, if done by an adult, would constitute the crimes of menacing (Penal Law, § 120.15) and criminal possession of a weapon in the fourth degree (Penal Law, § 265.01). On the date of the scheduled hearing, the respondent was placed, on another docket, with the Commissioner of Social Services (Commissioner) as a neglected child. Specifically, the court had found that his mother’s paramour, while intoxicated, had beaten the boy excessively. On one such occasion, the youngster sustained severe bruises about his back. The court also found that the boy’s mother had failed to take appropriate action to protect the child from these assaults. The placement with the Commissioner was ordered after a full investigation by the Probation Department and the receipt of a complete psychiatric evaluation.
In light of the disposition of the neglect case, the Law Guardian moved to dismiss the instant delinquency matter. The petitioner, however, insisted on a hearing. The court, therefore, must clarify the status of the petitioner-complainant and determine whether it has the power to grant the Law Guardian’s motion over his objection at this pre-fact-finding stage of the proceeding.
This very same issue was raised as a question of first impression in Matter of Charles C. (83 Misc 2d 388). There the Family Court (Shea, J.) decided that although a petitioner in a delinquency proceeding has a statutory right to file a petition this does not give him the further right to a trial. The court stated (p 392): "A delinquency proceeding is civil in nature (see section 781 of the Family Court Act) in that its purpose is not punitive and it is governed procedurally by the CPLR, to the extent its provisions are appropriate * * * However, the Family Court Act itself provides protections to juveniles which have their origins in the criminal law * * * Moreover, the United States Supreme Court has accorded children many of the Fourteenth Amendment due process rights available to adult criminal defendants. (Kent v United States, 383 US 541; Matter of Gault, 387 US 1; Matter of Winship, 397 US 358; cf. McKeiver v Pennsylvania, 403 US 528.) The New York Court of Appeals has recognized that delinquency proceedings, which may result 'in a loss of per *1114 sonal freedom, are at the very least quasi-criminal in nature.’ (Matter of Gregory W., 19 NY2d 55, 62).”
Judge Shea went on to cite Matter of William S. (70 Misc 2d 320, 321-322) and its description of delinquency cases as being "hybrid [in] nature,” an expression of the dilemma "which often confronts the Family Court in juvenile matters— is the proceeding criminal or civil?” Without allowing this dilemma to prevent it from responding meaningfully to the issue presented, the court in Charles C. (supra, p 393) looked to the reality of the matter before it. Recognizing its unique role in delinquency proceedings it concluded: "In determining whether a hearing should be held in a delinquency case, the court should give weight to the wishes of petitioner and complainant, but it may not permit them to have the deciding voice. Their knowledge pertains only to the facts arising from the alleged delinquent act. The court also must consider and apply section 745 of the Family Court Act which mandates that before a child can be adjudged a delinquent, there must be a need for court intervention — the child must be found to be in need of supervision, treatment or confinement. (Matter of Ronny, 40 Misc 2d 194, 197; Midonick, Children, Parents and the Courts: Juvenile Delinquency, Ungovernability and Neglect 16-17 [1972].)”
It should be noted that in citing Matter of Ronny (supra, p 197) Judge Shea refers, in particular, to the following passage: "the finding of fact as to conduct alone may not support an adjudication * * * of 'delinquency’ * * * This petition will be dismissed without any adjudication of 'delinquency’ * * * if the probation and psychiatric reports indicate that the boy is not in need of supervision, treatment or confinement under court order (Family Ct. Act, §§ 743 [now § 712, subd (g)] 745, 752.) In this respect, a finding of delinquency * * * requires a basis of a finding of a condition showing need for the attention of the court, in addition to the mere conduct alleged, and in this respect differs from the criminal court procedures for older persons. The Family Court does not find a child 'delinquent’ * * * unless there is a need for its rehabilitative or protective functions.”
The reasoning and holdings in Matter of Charles C. (supra) and Matter of Ronny (supra) seems completely dispositive of the issue at bar. And yet, a doubt is created in this court’s mind by the opinion of one of its respected brother Judges (Turret, J.) in Matter of Elizabeth J. (98 Misc 2d 362). Judge *1115 Turret cites therein Matter of Charles C. (supra) and Matter of Edwin R. (67 Misc 2d 452). Both had granted preadjudicatory motions to dismiss delinquency petitions; both had supported their decisions by referring to that language in Matter of Ronny (supra) which is quoted above. Judge Turret, however, held that these cases are no longer controlling: "These cases were grounded on the proposition that there must be a need for court intervention to supervise, treat, or confine a child. Since these cases were decided, section 711 of the Family Court Act * * * has been amended. Chapter 878 of the Laws of 1976 was enacted and section 711 of the Family Court Act now provides: 'In any juvenile delinquency proceeding under this article, the court shall consider the needs and best interests of the respondent as well as the need for protection of the community(Emphasis added.)” (Matter of Elizabeth J., supra, p 363.) The italicized portion of section 711 is denominated an "additional factor”, which "can only be weighed after there has been a finding of fact (Family Ct Act, § 752) and after a second hearing on disposition. (Family Ct Act, §§ 743, 753.)” (Matter of Elizabeth J., supra, p 364.)
Although Elizabeth J. (supra, p 364) appears to decide categorically that preadjudicating dismissals are now barred by the amended section 711 of the Family Court Act, it also states that "[a]t a dispositional hearing the court should have before it a current investigation and report from the Probation Department as to respondent’s present needs for treatment, supervision or confinement, with due consideration for protection of the community.” It is not clear, therefore, whether the decision in Elizabeth J. (supra) would have been different if the court had had current probation reports prior to fact finding. And yet, notwithstanding this closing language of Elizabeth J., the impact of the decision seems to rest on the court’s conclusion that the 1976 amendment of section 711 of the Family Court Act precludes the dismissal of delinquency petitions before fact finding, as had been approved previously in Matter of Charles C. (83 Misc 2d 388, supra) and Matter of Edwin R. (67 Misc 2d 452, supra).
Consequently, the court must disagree with Judge Turret’s view of the prevailing law. It takes issue with him on the impact of section 711’s 1976 amendment and his rejection of Family Court’s unique discretion to deal swiftly, efficiently and meaningfully with the realities of pending delinquency matters.
*1116 Initially, it must be underscored that in amending section 711 of the Family Court Act, section 2 of chapter 878 of the Laws of 1976 added both the needs and best interests of the respondent and the protection of the community to the purpose clause of article 7. Previously, neither of these considerations appeared in the statute. Therefore, the 1976 amendment could have one of three possible meanings. The Legislature either recognized that neither of these considerations previously existed and sought to establish both; or that both had existed and sought merely to codify them; or that only one had existed and in codifying one sought to add and codify the other. The court in Elizabeth J. (98 Misc 2d 362, supra) chose the third option, but without citing any authority for that proposition. This court now holds that the rehabilitation of the juvenile and the protection of the community have always constituted the rationale for Family Court delinquency proceedings. Thus, the 1976 amendment merely codified that preexisting dual purpose.
In May, 1976, prior to the effective date of the new section 711, the Court of Appeals in People ex rel. Wayburn v Schupf (39 NY2d 682) discussed the constitutionality of pretrial preventive detention under former subdivision (b) of section 739 of the Family Court Act (L 1962, ch 686). In its analysis of that section, which had been part of the Family Court Act as originally enacted in 1962, the court clearly indicated (pp 688-689) that the State’s concern in dealing with juvenile delinquents has always been twofold:
"protection of the public peace and general welfare justifies resort to special procedures designed to prevent the commission of further criminal acts on the part of juveniles as differentiated from adults.
"From the other aspect, the State has a recognized interest in making provision for the protection and training of children in difficulty, a concern which is at the heart of the juvenile justice system. (Matter of Samuel W., 24 NY2d 196, 197, revd on other grounds sub nom. Matter of Winship, 397 US 358.)”
This same duality of purpose was evident from the inception of the Family Court, though not as plainly expressed as in Wayburn (supra). The Report of Joint Legislative Committee on Court Reorganization (1962, II, Family Ct Act, pi et seq.), issued by those who drafted the Family Court Act, viewed the new State-wide court "as a special agency for the care and *1117 protection of the young and the preservation of the family.” (1962 Report of Joint Legis Committee on Ct Reorganization, II, Family Ct Act, p 2.) In this context, its juvenile delinquency jurisdiction was to be governed by the guiding principle of the early juvenile court movement, i.e., that such proceedings "should be 'civil,’ not 'criminal.’ ” (Id., p 6.) "And so the decision was made to avoid a criminal conviction for the young and to shape the law and provide a court to guide and supervise, rather than punish, children in trouble.” (Id., p 6.) Rehabilitation was obviously a goal, if not the central goal, of delinquency proceedings. And yet, the committee readily admitted: "that such an adjudication involves a youth who commits crimes and requires supervision, treatment or commitment. The Committee also finds that the power of a court on such an adjudication is substantially similar to the power of a criminal court on 'conviction of crime.’ ” (Id., p 6.) There is no question that delinquency proceedings were considered quasi-criminal and that the court’s power to commit a child at disposition was directly related to the fact that he had threatened the peace and welfare of the community by violating its penal laws. The new Family Court would be empowered not only to treat and supervise an adjudicated delinquent, but also to segregate him from the public, just as a criminal court could do by imprisoning a convicted adult at sentencing.
Consequently, the committee acknowledged that a delinquency commitment — "whether 'civil’ or 'criminal’, whether assertedly for 'punitive’ or 'rehabilitative’ purposes — involves a grave interference with personal liberty and is justified only by urgent reason.” (Id., p 8.) In this regard, it found that although a "person in need of supervision,” or a PINS (i.e., a juvenile charged under article 7 with noncriminal misbehavior) might require, by reason of his condition, as much rehabilitation as a delinquent, nevertheless his commitment would not be authorized. The "urgent reason” supporting confinement for delinquents does not exist for PINS children. The latter have committed no crimes and therefore do not warrant removal from the community.
Thus, the legislative history of the Family Court Act reflects the lawmakers’ realization that delinquency proceedings and the commitments thereunder are more than voluntary service programs for the juvenile’s benefit alone. The coercive intrusion of the State into the child’s life and the control ultimately exercised over him convinced the legislators that these *1118 proceedings are in so many aspects criminal in nature. (Id., pp 6-7.) They therefore implied that except for the punitive, which was specifically excluded (id., p 6), criminal law purposes, e.g., quarantine and deterrence, are definitely involved in these cases. This caused the legislators to formulate procedures that would be consonant with the recognized rights of alleged delinquents to due process of law. (Id., pp 9-10.)
The United States Supreme Court announced a similar understanding of the juvenile court system in a series of cases appearing soon after the effective date of the Family Court Act. All of these cases addressed the civil-criminal nature of delinquency proceedings and the need to guarantee that they incorporate a balanced degree of due process protections. (Kent v United States, 383 US 541; Matter of Gault, 387 US 1, supra; Matter of Winship, 397 US 358, supra; McKeiver v Pennsylvania, 403 US 528, supra.)
In Gault (supra), the court reviewed the early history and promise of the juvenile court movement. It recalled (p 15) how the substance and procedures of the criminal law were to be discarded and how "[t]he child was to be 'treated’ and 'rehabilitated’ and the procedures, from apprehension through institutionalization, were to be 'clinical’ rather than punitive.” (Matter of Gault, supra, pp 15-16.) The court, however, lamented the failure of the system to achieve its goal and, in facing the facts of the case before it, stated (p 27): "Ultimately, however, we confront the reality of that portion of the Juvenile Court process with which we deal in this case. A boy is charged with misconduct. The boy is committed to an institution where he may be restrained of liberty for years. It is of no constitutional consequence — and of limited practical meaning — that the institution to which he is committed is called an Industrial School. The fact of the matter is that, however euphemistic the title, a 'receiving home’ or an 'industrial school’ for juveniles is an institution of confinement in which the child is incarcerated for a greater or lesser time.”
Following upon this candor, the opinion characterized the purpose of juvenile court procedures "to establish precisely what the juvenile did and why he did it — was it a prank of adolescence or a brutal act threatening serious consequences to himself or society unless corrected?” (Matter of Gault, supra, p 28.) Therefore, in acknowledging the power of the juvenile court to "incarcerate” and in describing its purpose to determine whether an alleged delinquent act is evidence of *1119 threatened harm both to the juvenile and to the public, the United States Supreme Court expressed the same convictions concerning rehabilitation and community protection, as this court finds to be the legislative intent of the 1962 Family Court Act. Moreover, it should be remarked that the Family Court Act was frequently cited by Gault as an example of a statutory response to the "reality” of the juvenile court system.
Decisions of various New York courts announcing the same or similar analyses appeared contemporaneously with these Supreme Court opinions. In each case, the New York court admitted to the "quasi-criminal” nature of delinquency proceedings and attempted to define for them the relevance of due process safeguards. (Matter of Gregory W., 19 NY2d 55, 62, supra.) In the context of determining the applicability of the former Code of Criminal Procedure and the current Criminal Procedure Law, our courts continued to allude to delinquency actions as hybrids of both the civil and criminal law. In some cases, criminal procedure was applied, as an embodiment of certain due process protections which were deemed absolutely requisite; in others, courts found that the effort to maintain delinquency actions as civil proceedings prevented its application. (See Matter of Daniel D., 27 NY2d 90; Matter of Palmer v McInerney, 35 AD2d 428; Matter of Aaron D., 30 AD2d 183; Matter of Steven B., 30 AD2d 442; Matter of William L., 29 AD2d 182; Matter of Archer, 89 Misc 2d 526; Matter of William S., 70 Misc 2d 320; Matter of White, 70 Misc 2d 541; Matter of Williams, 49 Misc 2d 154.) Nonetheless, whatever the result, each opinion struggled with the interplay of the civil and criminal elements in delinquency matters. Each cited the United States Supreme Court cases (supra) for their formulation of the issues involving a juvenile delinquent’s due process rights. Each, in its recognition of and concern for these rights, conceded that the purpose of these proceedings go beyond rehabilitation to include elements more commonly associated with State penal auathority, which ostensibly operates for the protection of the community.
The 1976 amendment of section 711 of the Family Court Act changed nothing. It was merely a legislative restatement of the most rudimentary aspects of common sense, which had always controlled article 7 proceedings. Rehabilitation of the child and protection of the community were and are complementary components of this process that is only resorted to *1120 because a child in trouble has made trouble. The reason for court intervention has always been to determine and respond to the child’s need for help in order to meet the community’s need for safety. It is true that maximum controls for the sáke of public security were not authorized by the law under the pre-1976 Family Court Act, nor are they today. This fact hardly indicates that security was not sought. On the contrary, since there existed a minimum degree of control, it shows that a juvenile’s rehabilitation was and is subject to limitation by the counterbalancing concern for community protection.
It is also significant that in amending section 711 of the Family Court Act the Legislature did not amend section 731. Therefore, it must have understood section 731 (subd 1, par [c]), which requires proof of a juvenile’s need for supervision, treatment or confinement, to have already included the elements of rehabilitation and community protection. Thus, prior to 1976, when making a finding of delinquency under section 752 of the Family Court Act or dismissing a petition under section 751, a court’s consideration of the allegation contained in section 731 (subd 1, par [c]) could not have related to rehabilitation only. Otherwise, supervision, treatment or confinement would have merely referred to this single factor and additional language would have been needed to represent the purportedly new dimension of community protection.
Furthermore, it is interesting to note that even though the Legislature in 1976 (L 1976, ch 878) and 1978 (L 1978, chs 478, 510) increased the extent and degree of control over adjudicated delinquents it left untouched those sections (§§ 731, 751, 752) dictating dismissal of a petition if supervision, treatment or confinement are found unwarranted. (Matter of Quinton A., 68 AD2d 394, 401.) Thus, in amplifying the potential for control through restrictive placement, while continuing to demand proof of the section 731 (subd 1, par [c]) allegation, the security implications of the unchanging phrase, "supervision, treatment or confinement”, were further clarified.
Additionally, it must be remembered that even with the 1976 and 1978 changes in article 7, the Legislature still retained section 716 of the Family Court Act. (See, also, Matter of Charlene H., 64 AD2d 900.) This section allows the court at any time in the proceedings to substitute a PINS petition for a delinquency petition or a neglect petition for a delinquency or PINS petition. It is evident then that the *1121 option not to exercise its delinquency jurisdiction remains available to the court at the preadjudicatory stage of the proceeding. Consequently, when the court is asked to dismiss a delinquency petition prior to fact finding, as if upon a motion to dismiss (CPLR 3211) or one for summary judgment (CPLR 3212), it cannot be argued that the Legislature has precluded the court from entertaining such an application. If it is, then the court is equally precluded from exercising its options under section 716 of the Family Court Act. For in granting a preadjudicatory application to dismiss, the court determines that all the relevant facts have been presented concerning a juvenile respondent’s history and background, his current psycho-social condition and his outlook for the future; that these facts indicate delinquency treatment is not recommended, and that a fact finding of criminal conduct would not give rise to a contrary opinion. Thus, the very same preadjudicatory predictive judgment is operative in the decision to dismiss, as in the decision to substitute under section 716 of the Family Court Act. To allow the latter and not the former is simply illogical, especially since both procedures are available under the Family Court Act — substitution under section 716 and dismissal under section 165 and its reference to the CPLR.
It is also relevant that the Legislature has maintained the probation intake process in section 734 of the Family Court Act. With certain restrictions, the Probation Department is authorized to adjust delinquency cases (i.e., divert them from court) prior to the filing of a petition. The court, therefore, cannot be convinced that delinquency matters can be disposed of prior to filing, but not after filing and prior to adjudication. It is argued, however, that adjustment requires the petitioner’s consent and that access to the court, if sought, cannot be denied. (Family Ct Act, § 734, subd [b].) Nevertheless, even though an adjustment is a settlement upon consent, the fact remains that the Probation Department is authorized to seek and accept a consent. With regard to the need for court intervention, it is empowered to make a predictive judgment prior to filing identical with the one the court would make upon an application to dismiss prior to adjudication. Apparently, the Legislature believes that such a judgment can be made before fact finding.
Furthermore, on the question of petitioner’s access to the court, his right is the same as any other litigant in a plaintiff *1122 position. Once a proceeding is commenced, he must sustain his case against attack, including pretrial attack. (See CPLR 3211, 3212.) If, at any point, he fails to overcome respondent’s attempts to defeat his "complaint”, petitioner will be prevented from going forward, which in no way prejudices his right to be heard. For, after all, his is only the right to begin.
Wherefore, this court concludes that the law and policy governing the dismissals in Matter of Charles C. (supra) and Matter of Edwin R. (supra) are the same today as when those dismissals were granted. The 1976 amendment of section 711 of the Family Court Act has not overruled the holdings in those cases, but has codified the very law and policy upon which they rested, i.e., that rehabilitation of the juvenile delinquent and protection of the community constitute the dual purpose of delinquency actions in this State.
Moreover, this court decides that although the Legislature has recently enacted many changes in the practice and procedure under article 7 of the Family Court Act it has maintained this court’s unique discretion to consider the need for State intervention in a juvenile’s life at any time in a delinquency proceeding. Family Court may, even prior to fact finding, refuse to exercise delinquency jurisdiction over a juvenile respondent when, upon sufficient facts, it is determined that all that must be done is being done.
As already recited, the court has found under separate docket that respondent herein is a neglected child and has placed him with the Commissioner of Social Services for care and supervision. To this end, it has reviewed current investigation reports and recommendations by the Probation Department concerning the subject juvenile. The court is convinced beyond all doubt that this placement is in the best interests of the child and not inimical to the need for community protection. Even if there were a finding on the instant allegations of criminal conduct, the final disposition herein would not disturb the placement for neglect. Moreover, the Corporation Counsel stated that he had urged the petitioner to withdraw this case which the petitioner was unwilling to do. (Though significant, this is not controlling. The role of the Corporation Counsel in a juvenile delinquency proceeding is to represent the petitioner. Therefore, the Corporation Counsel can assert no right greater than that which inures to his client.) To continue this court’s delinquency jurisdiction over respondent would subject him to further and unnecessary court involve *1123 ment, and result in a grandiose waste of time and the taxpayers’ money.
Accordingly, for the reasons stated hereinabove, respondent’s motion is granted and the instant petition is dismissed.