*1103 OPINION OF THE COURT
Richard D. Huttner, J.
Respondent, age 15, is charged with the rape, sodomy and sexual abuse of his younger sisters, ages 5 and 8. The rape and sodomy as charged are designated felony acts. (Family Ct Act, § 712, subd [h].)
Before this action was commenced, respondent’s mother sought the aid of the Office of Special Services for Children to resolve this grave family problem. They referred the matter to the Society for the Prevention of Cruelty to Children. The society admonished the respondent’s mother that unless she reported the matter to the proper law enforcement authorities, they would remove the sisters from the home, the mother reluctantly complied and respondent was arrested.
Subsequently, a request by respondent’s mother not to prosecute was declined by the District Attorney.
The Law Guardian, by order to show cause, seeks the following relief:
1. Dismissal of the petition, on the grounds that the complainant was not apprised of the procedures available for the institution of a family offense proceeding, under article 8 of the Family Court Act.
2. Dismissal of the petition in the interest of justice, since neither the mother nor alleged victims wish to proceed with the prosecution, but wish instead to pursue community resources to rehabilitate the respondent.
3. Dismissal under the aegis of Matter of Edwin R. (67 Misc 2d 452). Since the respondent is already receiving supervision and treatment, and intends to continue to do so, it is therefore unnecessary for the court to order further confinement, supervision or treatment.
4. Substitution of a neglect or person in need of supervision "PINS” — petition pursuant to section 716 of the Family Court Act.
The Law Guardian’s application for a dismissal in the interest of justice, based upon the respondent’s family’s desire to seek rehabilitation services independently is denied. Section 711 of the Family Court Act mandates, inter alla, that the court "consider the needs and best interests of the respondent as well as the need for protection of the community”. (Emphasis added.) I cannot sanction a respondent accused of the serious crimes of incestuous rape and sodomy, to be allowed to *1104 be free from the watchful vigil of the court and participate in a treatment program on a voluntary basis supervised only by his parents.
Respondent’s argument that the case should be dismissed pursuant to Matter of Edwin R. (supra) likewise is inappropriate. Before invoking the extreme remedy of dismissal, the court must have before it evidence that any further supervision, treatment or confinement is unnecessary. Because the auxiliary services of the court, i.e., Probation Department and Mental Health Services, etc., have yet to conduct any in-depth investigation or studies of the respondent, the psychosocial evaluation of the respondent and his family is scant and uninformative. Accordingly, this aspect of respondent’s motion is premature, and is dismissed without prejudice.
The Law Guardian’s application for substitution of a neglect petition is likewise untenable, since the record is barren of any manifestation of parental neglect.
Two further requests for relief remain for this court’s determination. The commencement of a family offense proceeding under article 8 of the Family Court Act or, the substitution of a petition to determine whether respondent is a person in need of supervision, "PINS”, in place of the pending juvenile delinquency petition pursuant to section 716 of the Family Court Act.
Because this matter involves a lamentable and explosive intrafamily circumstance, the protection of the family unit from the potential divisiveness and chaos upon it inherent in the pending quasi-criminal prosecution must, if possible, be considered. (Matter of Appell v Appell, 37 AD2d 966.) A delicate balance must be struck between judicial responsiveness and its attendant intrinsic stresses and strains and the maintenance of the integrity of the respondent’s family. Enough disruption and psychic damage has occurred if in fact respondent is at fault. It is now this court’s incumbency to minimize any further familial impairment while administering its responsibilities to all involved.
The difficulties inherent in fashioning solutions to like family problems have been anticipated by the drafters of the Family Court Act. This awareness finds expression in section 141 of the Family Court Act, which states that once the conditions for intervention by the court in the life of a child and parent have been met, "the court is given a wide range of powers for dealing with the complexities of family life so that *1105 its action may fit the particular needs of those before it. The judges of the court are thus given a wide discretion” (emphasis added).
Flexibility of approach to each problem is the sine qua non of the Family Court process. Resolutions to the complex problems that everyday face this court cannot be realized if the court is slavishly bound to statutes, rules and regulations that are immutable and cast in stone.
Section 141 of the Family Court Act is illustrative of this legislative awareness and enlarges the parameters of judicial discretion in matters of this nature.
This, the respondent’s first court contact, deals with conduct directed to members of his own family and not to the community. The Family Court Act recognizes a philosophical as well as a remedial distinction with regard to such behavior and is accordingly treated differently. This philosophical distinction is statutorily manifested in article 8 of the Family Court Act, "Family Offenses Proceedings”; section 811 of the Family Court Act is entitled "Findings and purpose”. An examination of the section illustrates clearly a legislative discrimination between misconduct directed outside the family as opposed to intrafamily misconduct. It states: "In the past, wives and other members of the family who suffered from disorderly conduct, harassment, menacing, reckless endangerment, assaults, or attempted assaults by other members of the family or household were compelled to bring a 'criminal charge’ to invoke the jurisdiction of a court. Their purpose, with few exceptions, was not to secure a criminal conviction and punishment, but practical help.” (Emphasis added.)
Article 8 permits even as heinous a crime as assault in the first degree under appropriate circumstances, to be adjudicated within the confines of the Family Court so that a civil remedy rather than a criminal sanction could be secured. The purpose of this procedure is to insure the maintenance of the family unit. Section 812 (subd 2, par [b]) of the Family Court Act states: "That a family court proceeding is a civil proceeding and is for the purpose of attempting to keep the family unit intact.” (Emphasis added.)
It is apparent from reading the above citations that the Family Court’s approach to intrafamily discord is rehabilitative in scope and design.
Although the intent expressed in article 8 of the Family Court Act, as outlined above, is instructive with regard to *1106 Family Court philosophy in dealing with intrafamily offenses, its utilization unfortunately is proscribed with regard to the acts alleged. Plainly, section 812 of the Family Court, by its own terms, is applicable only to "acts which would constitute disorderly conduct, harassment, menacing, reckless endangerment, an assault or an attempted assault between spouses or between parent and child or between members of the same family or household”. Acts of the nature alleged to have been committed by respondent are not within the ambit of the designated family offenses. (People v Lewis, 29 NY2d 923; People v Webb, 52 AD2d 8.) The respondent’s motion for the institution of an article 8 Family Court proceeding is therefore denied.
It is apparent from the psychiatric reports submitted with the moving papers, and from the very nature of the allegations, that if the respondent is guilty, then he and his family are desperately in need of this court’s assistance. The court’s intervention however, for the policy reasons previously outlined, should not, if possible, be through the instrumentality of a juvenile delinquency proceeding which is quasi-criminal in nature and effect. (Matter of Dorothy D., 49 NY2d 212; Matter of Gregory W., 19 NY2d 55; Matter of Rubin M., 93 Misc 2d 97; Matter of Terry T., 90 Misc 2d 1015.)
The issue distilled, is whether this petition can appropriately be substituted by a "PINS” petition pursuant to section 716 of the Family Court Act. This court is cognizant that "PINS” misbehavior is usually of a relatively minor nature, consisting of habitual truancy, or habitual incorrigibility manifesting itself by the youth’s refusal to obey his parents lawful commands. Although there is authority for the conversion of a petition alleging a "crime” to a "PINS” petition, this court could find no reported cases wherein in fact, such a substitution was effectuated. (Matter of Quinton A., 68 AD2d 394, 401, revd on other grounds 49 NY2d 328; Matter of Ronny, 40 Misc 2d 194.) Despite an absence of precedent, this court is not reluctant, considering the special circumstances of this case, to consider the viability of the substitution of a "PINS” petition. (Family Ct Act, §§ 716,141.)
If a proceeding more appropriate than a juvenile delinquency proceeding can assure the delivery of treatment needed by the respondent, such a proceeding should be utilized if legally permissible. Any other action is an abuse of discretion. (Matter of Quinton A., supra; Matter of Richard C., *1107 43 AD2d 862; Matter of Charlene H., 64 AD2d 900; Matter of Anthony H., 77 Misc 2d 406.)
There are substantial analogies between the circumstances surrounding this petition and the "garden variety” "PINS” petition. In this case, as in the usual "PINS” proceeding, the parents turn to the court for its assistance with their child, whose behavior is beyond their control. The petition herein alleges a course of rapes and sodomies occurring over a period encompassing 11 months. Habitual misconduct is also a hallmark of the "PINS” petition. In this case, as in most "PINS” matters, the respondent’s alleged behavior affects primarily his own family. Significantly, the community is not victimized by the alleged misdeeds of the respondent and its safety is not jeopardized. But most importantly, the "PINS” parent and the respondent’s parent herein share the mutual hope that the family unit can be ultimately rehabilitated to a point where all its members can live harmoniously and without fear of harm from each other.
The dispositional alternatives available in a "PINS” matter (Family Ct Act, § 754) are dissimilar in the scope, severity and design than those dispositions available after a designated felony finding. (Family Court Act, § 753-a.)
The court at this juncture, solely upon the papers submitted on this motion, is unable to determine whether or not the respondent’s rehabilitation would require the more severe dispositions available under subdivision 1 of section 753-a of the Family Court Act (designated felony dispositions), or whether the less onerous dispositional alternatives available after a "PINS” finding (Family Ct Act, § 754) would be suitable. Since rehabilitation is the prime purpose of the Family Court, if the respondent could not be rehabilitated utilizing the "PINS” dispositional alternatives, but requires instead any of the designated felony dispositional alternatives (Family Ct Act, § 753), it would then be inappropriate to substitute the pending juvenile delinquency petition by a "PINS” petition.
Also, although it is alleged that the acts of this respondent • have to date been directed solely against his siblings, the court must be satisfied that during respondent’s rehabilitation both society and his sisters are secure from any future acting out. (Family Ct Act, § 711.)
Expert psychiatric testimony is needed to answer the foregoing questions. Therefore, a hearing is ordered wherein psychiatric testimony will be heard in order to guide the court to an *1108 informed, intelligent decision as to whether or not to convert this petition to a "PINS” petition. This hearing shall comply with the statutory requirements concerning dispositional hearings under article 7 of the Family Court Act. The testimony adduced at such hearing shall be inadmissible at any subsequent fact-finding hearing held in this matter.
It is hereby ordered that Mental Health Services conduct a full psychiatric study of respondent, his parents and sisters, and that the Probation Department explore possible placement facilities.
This matter is scheduled for such hearing in Part 4 on April 30, 1980.